## EDWARD H. NAPIER v. J. W. HODGES.

By the amendatory act of 27th October, 1866, the person desiring to retail liquor is required to deliver to the county treasurer a bond, payable to the county judge, conditioned, &c., and to pay into the county treasury a license tax, *at the rate* of $300 per annum, when the clerk of the county court is authorized to issue a license for the time he applies and pays for. (Acts of 27th November, 1866, p. 68, Paschal's Dig., 2d ed., Arts. 2061, 2064.)

This license is indispensable, and is the only authority to the retailer to sell such liquors in quantities less than a quart, under the law as it now stands.

By another act, passed at the same session, (16th November, 1866,) the retailer who is pursuing, or about to pursue, this occupation of selling such liquors in quantities less than one quart, is assessed a tax at the rate of $300 per annum, for the benefit of the state treasury. (P. 91, sec. 5.) And he is required by another act, approved 10th November, 1866, (p. 142, sec. 10,) to make application to the assessor and collector, and to pay the amount to him, prior to pursuing such occupation, under a penalty of *fifty per cent.* and costs, for a failure to do so within five days thereafter. The legislature had the power to pass these laws, and they are not inconsistent with each other.

Retailing, as defined by these several laws, is selling in quantities less than a quart.

By the constitutions, both of 1845 and 1866, it is declared that "the legislature shall have power to lay an income tax, and to tax all persons pursuing any occupation, trade, or profession; provided that the term occupation shall not be construed to apply to pursuits, either agricultural or mechanical." (Paschal's Dig., Art. VII, sec. 27, pp. 67, 942, Note 201.) Retailing being an occupation which is pursued for profit, there is no limitation upon the legislature, as to its powers of taxation over the subject, except the limitation imposed by its own discretion.

Two statutes, strictly in *pari materia*, enacted at the same session, are considered as one statute, and must be construed together; and each must be upheld, unless their provisions are absolutely repugnant to each other. And repeals by implication are not favored.

There is no repugnancy between the act of 27th October, 1866, and that of 6th November thereafter. In the first, it was intended to guard against the abuses of the privilege of retailing, by requiring a bond with stringent conditions, and making it a misdemeanor for their violation. In the second, the main object seems to have been to raise revenue upon the subject of taxation, which it was supposed by the legislature would in all probability prove a profitable source of revenue.

The whole is an occupation tax, which, under the constitution, the legislature had the right to impose.

The 7th section of the act of 6th November, 1866, which declares that "all licenses taken out to pursue any taxable calling or occupation before the 1st day of January next shall expire on that day; and if the occupation be one upon which tax is levied in section 5 hereof, the *pro rata* amount for the unexpired time shall be credited on the amount as levied by this act," applies to the tax to be received by the county court; and does not bear the inference that either tax was to be dispensed with.

The 10th section of the act of November 10, 1866, (p. 142,) for the assessment and collection of taxes, makes it manifest that the legislature contemplated that *licensed* retailers were the persons who were to pay the state tax to the assessors and collectors.

Appeal from Williamson.    The case was tried before Hon. John Ireland, one of the district judges.

The petition claimed that the plaintiff, having paid the occupation tax of $300 into the county treasury, under the amendatory law of 1866, and having obtained the license to sell spirituous and vinous liquors under the law, was not liable to the state tax of $300, as an occupation tax, under the tax law of 1866; that the assessor had improperly levied such license tax and the penalty for not paying it, and had distrained the plaintiff's property to pay the tax, all of which he claimed was illegal, and prayed an injunction. He also replevied his property under the statute, which bond got into the proceedings.    The assessor and collector filed a demurrer, and moved to dissolve the injunction. The court refused to dissolve on the face, but, the whole case having been submitted to the judge on the law and the evidence, the injunction was dissolved, and judgment rendered for $450.    There was also a judgment upon the replevy bond.    There was no bill of exceptions or statement of facts, and no answer of the defendant on which to base a judgment against the plaintiff; but the attorney general and the counsel of appellant insisted upon a decision upon the very merits of the question as to whether the legislature had the power to levy both taxes; and, if so,

did the two acts, taken as one, authorize the collection of both taxes.

*N. G. Shelley* and *Bowers & Walker*, for appellant.—I. The question presented by this appeal will be determined by what is deemed a proper construction of an act of the 11th legislature, entitled "An act to amend the 3d, 4th, 5th, and 9th sections of an act to authorize the county courts of this state to grant a license for the retail of spirituous, vinous, and other intoxicating liquors in quantities less than a quart and imposing a license tax for such privileges, approved February 2, 1856," approved October 27, 1866. And of an act entitled "An act to levy taxes," passed by the same legislature, approved November 6, 1866.

The appellant insists that the license tax imposed by the first act and occupation tax imposed by the latter act, referred to, could not both be legally collected, and that such was not the intention of the legislature; that the most which could have been demanded of him by the appellee was the occupation tax, after deducting the amount paid by him as license tax for three months from and after 7th January, 1867.

By the constitutions of 1845 and 1866 power is given to the legislature to levy three classes of taxation: "1st, an *ad valorem* tax on all property; 2d, an income tax; and, 3d, a tax on occupations, each and all to be equal and uniform. (Const., art. 7, sec. 27.)

II. While the manner of the exercise of this power is left with the legislature to determine, and we may concede an occupation tax may be imposed upon the privilege of pursuing a particular occupation under the designation of a "license tax" upon the occupation, which must be equal and uniform throughout the state, yet we submit that no such power is conferred by the constitution as will authorize the laying of both a license and an occupation tax upon the same pursuit. If the tax imposed under the one or the

xxxi—19

other designation is not the same, then we submit that the
expression of the power in the constitution to lay an "occu-
pation tax" is a denial of the power to lay a license tax.
(Aulanier v. The Governor, 1 Tex., 664; The State v. Ste-
phens, 4 Tex., 137.)

But we submit, that it was not the intention of the legis-
lature to attempt to enlarge the power conferred by the
constitution, and to lay both taxes sought to be collected
from the appellant in this case. That it was the purpose
to substitute the occupation tax imposed by the act ap-
proved November 6, 1866, (11th Leg., p. 91,) we think is
plainly deducible from the terms of the 7th section of said
act.

It is therein provided, "That all licenses to pursue any
taxable calling or occupation, before the 1st day of Jan-
uary thereafter, shall expire on that day," and, if the occu-
pation be one upon which a tax is levied in section 5. of
said act, "the *pro rata* amount for the unexpired time shall
be credited on the amount levied by the act." Vending
spirituous, vinous, or other intoxicating liquors is one of
the "occupations" upon which a tax is levied in "section
5." If it was intended that both the license tax of $300
and the occupation tax of $300 should be collected, why
terminate the license on the 1st of January, and credit the
*pro rata* for the unexpired time upon the occupation tax?
If it was intended that the license should be renewed, why
not give the credit to the sum to be paid for the new license?

It is submitted that an examination of section 10 of an
act entitled "An act for the assessment and collection of
taxes," approved November 10, 1866, can leave no doubt
that only one tax of $300 was intended to be imposed upon
the occupation of the appellant. (Gen. Laws, 11th Leg.,
p. 142.)

III. In the absence of any statement of facts the presump-
tion only extends so far as to regard the allegations in the
pleadings so far as they support the judgment, and will not

supply allegations.    It is insisted that the pleadings cannot support the judgment as rendered, and  the case should be reversed.    (Neill v. Newton, 24 Tex., 201.)

*E. B. Turner, Attorney General,* for the appellee.—I. There is no statement of facts or bill of exceptions in the record, and the judgment must be affirmed.    (See the cases cited in Paschal's Dig., Note 582.)    This has been the law since Jones v. Black, 1 Tex., 52.

II. Sufficient appears on the petition to warrant the judgment.    Occupation tax of $300 is levied upon the occupation mentioned in petition.    (Laws of 1866, p. 91, sec. 5.)    Penalty of fifty per cent. is imposed by act of November 10, 1866, (p. 142, sec. 10.)

III. The appellant's counsel confound the state tax of $300 levied upon the occupation of retailing spirituous liquors with the license tax, so-called, upon the same vocation, and insist that both cannot be collected under the constitution, assuming that both are not taxes upon occupation, because one is called license tax.

I believe both are collectable.    This suit arose because the assessor and collector demanded the state tax called occupation tax.    This tax was levied by the tax act of 1866, November 6, (p. 91, sec. 5.)    Penalty added November 10, 1866, (p. 142, sec. 10.)    Those are of later date than any law amending the license law of 1856; and if any law is repealed by implication, or if the two are inconsistent, this will stand.

It is greatly desired that the court will indicate its views upon the question, whether both taxes, called license and occupation, are collectable.    Such is my view, and such was the view of my predecessor, W. M. Walton, I find, by reference to recorded opinion in my office, pages 40, 41, and 42.

IV. The law of February 2, 1856, and as amended by the act of October 27, 1866, provides for a license to be given to a person who wishes to pursue the calling or vocation of selling liquors in quantities less than one quart, he first paying

to the county treasurer the amount to cover the time. The county treasurer gives his receipt, and the money goes into the county treasury. This receipt is presented to the county clerk, and the clerk issues the license. If the party neglects to do this, the remedy is by indictment. (Laws of 1866, pp. 68, 69.) The money collected upon indictment becomes also a county fund.

V. This amendment was made by the legislature of 1866 in regard to this county license, and afterwards they levied the state tax upon the same occupation. (Laws 1866, pp. 91, 142.) By these laws the state tax is levied by the assessor and collector; if not rendered or paid within a certain time, fifty per cent. is added, and distraint and sale of the property by the assessor and collector is the remedy. The money coming to the assessor and collector goes into the state treasury, and both sums are taxes paid by the person upon his occupation.

It cannot be supposed that the legislature amended the law of 1856 on the 27th of October, 1866, and as early as the 6th and 10th of November thereafter passed another law that necessarily operates as a repeal of the other, nor should such a construction be given if it can be avoided. (Mill v. Keys, 5 Tex., 33, and cases there cited; Paschal's Dig., p. 754, Note 1013.)

LINDSAY, J.—This case comes before this court in a very defective way for revision. There is no statement of facts, no bill of exceptions, no motion in arrest of judgment, nor for a new trial, in the record. We are left, then, by the pleadings and an exhibit in the petition, to determine upon the correctness of the judgment sought to be reversed.

The question which appears to be raised by the pleadings is, has the legislature the power, by two different statutes, to make two different assessments upon the same subject of taxation in the same period of time? Or, if it has that power, did it so intend to exercise it in the passage

of the acts of the 27th of October, 1866, and of the 6th of November, 1866, upon the subject of retailing spirituous, vinous, and other intoxicating liquors in quantities less than a quart?

By the first act the retailer is required to execute and deliver to the county treasurer a bond, payable to the county judge, with two or more sureties, embracing certain specified conditions and stipulations therein set forth, and to be filed in the clerk's office of the county, and then to pay into the county treasury a license tax, at the rate of $300 per annum, when the clerk of the county court is authorized to issue a license for the time he applies and pays for. This license is indispensable, and is the only authority to the retailer to sell such liquors in quantities less than a quart at all, under the law as it now stands. For a violation of this bond he is made amenable, both to a suit upon it and to a penal prosecution, for a misdemeanor.

By the second act the retailer, who is "pursuing or about to pursue" this "occupation" of selling such liquors in quantities less than a quart, is assessed with a tax at the rate of $300 per annum for the benefit of the state treasury, and is required by another act, approved November 10, 1866, (Sess. Acts, 1866, sec. 10, p. 142,) to make application to the assessor and collector, and pay the amount to him prior to pursuing such occupation, under a penalty of fifty per cent. and costs for failure to do so, within five days thereafter.

These are the several acts and their general provisions, the proper construction of which is involved in the determination of the rights of the parties in this suit. Upon the policy of such legislation we have no right, as a court, to comment. But into the power of the legislature, and its intention in the passage of these acts, it is the province and the duty of this court to inquire whenever the subject is brought before it.

These several acts, upon the subject of retailing spiritu-
ous liquors, are certainly unskillfully drawn up, and are
calculated to produce, and do produce, confusion in their
practical application. It is no wonder that the retailer is
in great doubt whether, as a matter of duty, he is bound
by law to pay a tax of $300, both to the county treasurer
and to the assessor and collector, for the privilege of retail-
ing, which retailing seems to be defined by the law, as it
now stands, as selling in quantities less than a quart. Sell-
ing by the quart, but less than a gallon, is not retailing in
contemplation of the statutes, although a tax of $100 is
also imposed upon that method of vending spirituous
liquors. There is a want of explicitness and method in
these different taxations which leaves the minds of the
tax-payers, who read the law to understand their duty to
the government, in great perplexity and doubt, and, when
practically enforced against them amid these doubts, it is
natural enough that dissatisfaction should arise. The
mind is apt to conclude that it is wrong to assess two
taxes upon the same thing at the same time. Hence it is
concluded, whenever it is done, that power is wrongfully
and unjustly exercised. This, however, does not necessa-
rily follow. With us the question is simply, has the legisla-
ture the power to impose this tax in the way it has under-
taken to do it? That is, can it assess a tax of $300 for
the benefit of the county treasury, and of $300 for the state
treasury, in the same period of time, upon the business
of retailing spirituous, vinous, and other liquors? We
have no hesitancy in saying, that the legislature has
such power, however unwisely or oppressively it may be
deemed to have exercised that power. By the constitu-
tions of both 1845 and 1866 it is declared, "The legislature
shall have power 'to lay an income tax, and to tax all per-
sons pursuing any occupation, trade, or profession,'" with
a restriction alone upon the power to impose it upon "agri-
cultural" and "mechanical" pursuits. Retailing being an

occupation which is pursued for profit, there is no limita-
tion upon the legislature as to its powers of taxation over
the subject, except the limitation imposed by its own dis-
cretion.   So far as its power is concerned, it may go to the
very verge of an interdict.   It is only to be tempered by
its own wisdom and its responsibility to its constituency.

In the enactment of these laws, then, was it the purpose
of the legislature to exact both of these taxes from the
retailer?   These several acts of the legislature were passed
at the same session, with short intervals between the periods
of their approval by the governor.   It is a rule of construc-
tion, recognized generally and adopted by the courts of
this state, that two statutes, *in pari materia*, enacted at the
same session, are considered as one statute, and must be
construed together, and each must be upheld, unless their
provisions are absolutely repugnant to each other.   It is
also a general principle of construction, in reference to
statutes generally, whether passed at the same session or
not, that "a repeal by implication is not favored" when-
ever it is possible to reconcile the two acts of the legislature
together.   There is no repugnancy between the statute of
the 27th of October, 1866, and that of the 6th of November,
1866.   In the first it was the purpose of the legislature to
guard against abuses of the privilege of retailing, by requir-
ing a bond with stringent conditions, and making it a mis-
demeanor for their violation.   In the second the main object
seems to have been to raise revenue upon a subject of tax-
ation which it was supposed by the legislature would in
all probability prove a fruitful source of revenue.   We are
satisfied, therefore, that it was the intention of the legisla-
ture that both of these taxes should be collectable.   The
whole is an occupation tax which by the constitution the
legislature had a right to impose.   It is virtually the im-
position of a tax of $600 upon the occupation of retailing
spirituous, vinous, and other liquors, and, from motives of
policy, collected in two different ways, and by the political

power of the state directed into different channels of adjustment and appropriation. Both taxes are but the occupation tax at last. The mere requisition of a license does not change its nature. If what is regarded as the occupation tax by the attorney for the appellant was paid to the assessor and collector, without the other payment to the county treasurer, and the obtention [obtaining?] of the "license" from the county judge, the retailer would not be shielded from prosecution for a misdemeanor. He would be still liable to the penalties of the law. But it is insisted that it was not the intention of the legislature to collect both taxes, because of the provision of the 7th section of the act approved 6th November, 1866. That provision is, "that all licenses taken out to pursue any taxable calling or occupation before the 1st day of January next shall expire on that day, and if the occupation be one upon which a tax is levied in section 5 hereof, the *pro rata* amount for the unexpired time shall be credited on the amount as levied by this act."

Observe, it is the license tax levied by this act. It is not the tax to be assessed by the assessor and collector. This credit is not to be made by the assessor and collector, but by the county judge from whom the license to retail is obtained. As licenses thereafter were to be granted quarterly, beginning with the commencement of the year, a sense of justice, it is supposed, prompted the legislature to direct the credit upon those thus arbitrarily suspended at the beginning of the year. This provision by no means warrants the conclusion which has been drawn from it. The purpose of the legislature seems to have been to interdict retailing altogether, unless under license, and to prescribe a method, *ex concesso*, by which the assessor and collector of the state taxes might know upon whom to call, and whom to hold responsible for the tax assessable for retailing. The law presumes that no citizen will violate the statutes of the state. And when the retailer has procured

his license, as the law requires, to engage in this occupation, then the assessor and collector has a claim upon him for the state tax.   If the retailer engages in it without license, he is obnoxious to the penalty of the law, whether he has paid the assessor and collector or not.   A conscientious citizen, who understands the law, and is mindful of his obligations to it, can never become responsible to the assessor and collector for this tax until he procures a license from the county judge for retailing.   The 10th section of the "act for the assessment and collection of taxes" (Sess. Acts 1866, p. 142) makes it manifest that the legislature contemplated that licensed retailers were the persons who were to pay this tax to the assessor and collector.   And, if they are licensed retailers, they must obtain license from the county judge; and to obtain that license they must first pay the tax prescribed in the statute. The 10th section also requires the retailer, who has procured his license, to make application to the assessor and collector within° five days of the commencement of his occupation, or within five days after the expiration of a license, (previously obtained, and running beyond the 1st of January, 1867, obviously must be meant,) under a penalty of fifty per cent. additional and assessor's costs. This reference to the expiration of the license, in this connection, must be to licenses already in existence at the passage of the law.   But the law still preserves and perpetuates its force and vigor, in requiring the retailer in this occupation "to make application to," and "make payment of the amount due," the assessor and collector "within five days," at least, after the commencement of his occupation.   Thus we are well convinced, from the whole context of all these statutes upon this subject, that the appellant was required to pay both of these taxes.   For this reason, as well as for the defectiveness of the record, in failing to exhibit a statement of facts, and in not presenting any other action in the court below to enable us

to determine whether errors were committed upon the trial, the judgment is

AFFIRMED.