THE STATE OF NEBRASKA, EX REL. JAMES W. SAGE, v. LLOYD D. BENNETT, TREASURER OF PLATTSMOUTH.

1. **Municipal Corporation:** TAX ON BUSINESS. Cities of the second class have authority under subdivision VIII., of section 69, of the act of 1879, entitled "An act to provide for the organization, government, and powers of cities and villages," to impose an occupation tax upon liquor dealers in addition to the amount paid for license to sell liquor.

2. ———: ———. The payment of such tax, however, cannot be made a condition precedent to the issuing of license to sell intoxicating liquor.

3. **Referee.** The findings of a referee, like the verdict of a jury, will not be set aside unless they are clearly wrong.

ORIGINAL application for mandamus.

*Chapman & Polk,* for relator.

*M. A. Hartigan,* for respondent.

MAXWELL, CH. J.

This is an application for a mandamus to compel the defendant, who is city treasurer of Plattsmouth, to pay two certain orders for $50.00 each, drawn by the mayor and clerk of said city on the "special license tax fund," in which it is alleged that at the date of presenting said orders to the defendant there was in his hands the sum of $3,534.92. The money is claimed under ordinance 132 of said city, which will be referred to hereafter.

To the petition the defendant filed an answer in which he admits that Plattsmouth is a city of the second class; admits that he is city treasurer, and that "the city, under ordinance number 115 of the city of Plattsmouth, licensed seven saloons in said city in the spring of 1885 for the next fiscal year, and exacted and received the sum of $500 each from said seven saloons."

" Admits that ordinance 132 was passed on the 14th day of April, 1884, and that the said city collected moneys there-under as a license tax ; that in the month of May the said saloon keepers paid into the city treasury and to this defendant as such treasurer the sum of five hundred dollars for each of said saloons, in all the sum of $3,500.00 which this defendant now holds, and is advised and believes the same is the money of and belongs to the common school fund of the city of Plattsmouth, under article eight (8), section five (5) of the constitution of Nebraska.

Defendant further answering says, that at the time of the issuance under ordinance 115, the whole sum of one thousand dollars was paid into said treasury, and to this defendant as said treasurer, before and as a condition precedent to the issuance of such license under ordinance number 115 as aforesaid, and in a single sum, the clerk of said city having refused to issue the said license until the whole sum of $1,000 was paid in hand, and that no other or different moneys have been paid or received by this defendant, and that the moneys so held by him were received as aforesaid and not otherwise."

The following is a copy of ordinance 115:

"An ordinance to license, regulate, and prohibit the selling or giving away of any intoxicating, malt or vinous, mixed or fermented liquors.

" Be it ordained by the mayor and councilmen of the city of Plattsmouth. That in compliance with chapter 50 of the Compiled Statutes of the State of Nebraska, entitled "Liquors," all persons intending to sell any intoxicating, malt, vinous, mixed, or fermented liquors within the city of Plattsmouth or in any of the wards thereof are hereby required :

" Sec. 1.    To present to the mayor and city council a petition for such a license to sell liquors signed by 30 of the resident freeholders of the ward (or where there are not 60 freeholders a majority of them) in which the applicant wishes to do business.

" Sec. 2d.   The applicant for the permission to sell liquors as aforesaid shall present to the city council and file with his said petition a bond in the penal sum of $5,000, payable to the state of Nebraska, with at least two good and sufficient securities, freeholders of Cass county, said bond to be approved by the city council.   The bond shall be conditioned that the applicant to sell liquors will not violate any of the provisions of chapter 50 of the Compiled Statutes of the state of Nebraska, and that he will pay all damages, fines, penalties, and forfeitures which may be adjudged against him under the provisions of such chapter.

" Sec. 3d.   No action of the council shall be taken upon any application until two weeks' notice of the filing of the same shall have been made in the official newspaper of the city of Plattsmouth, and if there are no objections made in writing and filed with the city clerk, and all of the provisions have been complied with, the license shall be issued by the said city clerk.   If there be any objections filed in the office of the city clerk, the mayor shall call a meeting of the council to hear the case, and if it shall have been proven that the applicant for license has been guilty of the violation of any of the provisions of the act entitled "Liquors," within the space of one year, or if any former license shall have been revoked for any misdemeanor against the laws of the state of Nebraska, then the council shall shall refuse to permit the issuance of such license.

" Sec. 4th.   On the filing of the petition and bond aforementioned the applicant for license shall deposit with the city clerk $500, which sum shall be the amount required by the city for license to sell liquors for the municipal year herein provided.   If by any reason the license should be refused by said city council, the said sum of $500 shall be returned to the person depositing the same.

"Sec. 5th.   A druggist, upon compliance with the provisions heretofore contained, and subject to all the penalties contained in chapter 50 of the Compiled Statutes of

the state of Nebraska, entitled "Liquors," will be granted a permit without any license fee, except the cost of issuing said permit to sell spirituous, vinous, and fermented liquors for medical and mechanical purposes only."

The following is a copy of ordinance 132:

"An ordinance providing for the levying and collecting of a license tax on occupations and business carried on within the limits of the city of Plattsmouth, to regulate the same, and to repeal ordinance No. 117, entitled an ordinance to provide for the levying and collecting of a license tax on occupations and business carried on within the limits of the city of Plattsmouth, to regulate the same, and to repeal an ordinance of the city council of said city, entitled an ordinance providing for the assessment and collection of license tax, being ordinance No. 86.

"Be it ordained by the mayor and councilmen of the said city of Plattsmouth, Nebraska:

"Sec. 1st.    That each and every person, firm, association, or other corporation carrying on the occupation or business herein mentioned within the limits of the city of Plattsmouth shall pay into the city treasury annually the sums named as hereinafter provided as a special license tax.

"Sec. 2d.    The money paid into the city treasury under the provisions of this ordinance shall constitute and be known as the 'special license tax fund.'

"Sec. 3d.    The special license tax fund shall only be used for paying the expense of grading and repairing streets, constructing and repairing sidewalks, the lighting of the city, and the paying of policemen; *Provided, however*, that the city council may at any time, by a majority vote of the councilmen elect, authorize the passage of an ordinance transferring money from the special license tax fund into the general fund of the city.

"Sec. 4th.    Under the provisions of the ordinance and the power vested by the ........ there is hereby levied on

State v. Bennett.

Non-resident auctioneers, per day........................$10 00
Hawkers and peddlers of goods, jewelry, and patent
    medicines, per day........................ 10 00
For each dollar store, concert, or exhibition, and all
    games not prohibited by the statutes, per day.. 10 00
Non-resident dentists, per day........................... 2 50
Non-resident canvassers, per day........................ 1 00

## LICENSE PER ANNUM.

Resident auctioneers.......................................$20 00
Bank ...................................................... 10 00
Grocery store—retail ..................................... 5 00
Grocery store—wholesale................................. 25 00
Meat market.............................................. 5 00
Druggists ................................................ 10 00
Dealer in dry goods carrying $10,000 or less of
    stock................................................ 10 00
Dealers in dry goods carrying more than $10,000
    and less than $15,000.............................. 15 00
General merchandise and clothing dealers the same
    as dry goods.
Hardware dealers carrying $5,000 or less of stock 5 00
Hardware dealers carrying more than $5,000 ...... 10 00
Jeweler carrying $10,000 or less of stock .......... 10 00
Jeweler carrying more than $10,000.................. 15 00
Boot and shoe dealer, exclusive........................ 10 00
Commission stores ....................................... 10 00
Grain dealer.............................................. 10 00
Tobacco and cigar dealer ................................ 5 00
Sewing machine dealer or agents....................... 5 00
Millinery and notion dealer............................. 5 00
Variety store and dealer in stationery................. 10 00
Merchant tailor.......................................... 5 00
Livery and feed stable................................... 10 00
Furniture dealer......................................... 10 00
Saddle and harness dealer .............................. 5 00
Hotel..................................................... 10 00

| | | |
|---|---:|---:|
| Restaurant and confectionery | $ 5 | 00 |
| Real estate dealer | 5 | 00 |
| Physicians and surgeons | 5 | 00 |
| Wagon and blacksmith shop | 5 | 00 |
| Dealers in stoves and tinware, exclusive | 5 | 00 |
| Flour and feed store | 5 | 00 |
| For each theatrical, opera, minstrel, or circus troupe | 5 | 00 |
| Agricultural and implement dealer | 5 | 00 |
| Resident dentists | 5 | 00 |
| Brick layers | 5 | 00 |
| Ice dealers | 5 | 00 |
| Saloons retailing liquor as a beverage, in addition to such sums as are now or hereafter shall be required under the laws of Nebraska | 500 | 00 |
| Billiard halls, one table | 25 | 00 |
| Each additional pool or billiard table | 10 | 00 |
| Bagatelle or Jennie lead tables, each | 5 | 00 |
| Bowling alley | 25 | 00 |
| Hack, dray, or omnibus | 5 | 00 |
| Lumber dealer | 10 | 00 |
| Photograph galleries | 5 | 00 |
| Express company | 15 | 00 |
| Telephone company | 10 | 00 |
| Telegraph company | 10 | 00 |
| Resident life insurance agents | 5 | 00 |
| Non-resident life insurance agents, per week | 1 | 00 |
| Each circus or menagerie, per day | 50 | 00 |
| Each side-show with circus | 10 | 00 |
| Non-resident parties consigning goods to resident auctioneers for sale, per day | 5 | 00 |
| Coal dealers | 5 | 00 |
| Printing offices | 5 | 00 |
| Second-hand stores | 5 | 00 |
| Shooting gallery | 15 | 00 |
| Shooting gallery, per week | 3 | 00 |
| Skating rink | 5 | 00 |

"Sec. 5th. All license provided for under this ordinance shall be issued and signed by the mayor and clerk; they shall specify the amount of money paid, the kind of business licensed, the name of the person to whom issued, and the length of time for which same was issued. The city clerk shall attest all licenses with the corporate seal, and deliver the same to the person applying therefor only on the production of a receipt signed by the city treasurer for the proper sum of money required by the ordinance. The person or persons to whom license is issued shall produce the same for inspection on demand of any resident of the city. No license shall be transferable in any manner whatsoever.

"Sec. 6th. All license issued under the provisions of this ordinance shall commence and end with the fiscal year, provided, however, that on and after October 1st of each year license may be issued good to the end of the fiscal year by payment to the city treasurer of half the amount required for an annual license.

"Sec. 7th. The license tax imposed under the provisions of this ordinance shall be payable in cash or in general fund warrants of the city. In case such licenses are paid in warrants the city clerk shall cancel the same, keeping a record thereof, and shall return the same to the city council.

"Sec. 8th. All persons who are required to take out annual license under the provisions of this ordinance shall apply to the city clerk for the same on or before the first Tuesday in May of each year, or as soon thereafter as they become engaged in business.

"Sec. 9th. Any person violating any of the provisions of this ordinance, or transacting any of the kinds of business herein taxed without having first obtained license therefor as herein provided, shall be guilty of a misdemeanor, and on conviction thereof shall pay a fine of not less than $5 or more than $100, or may be impris-

oned not more than ten days; and moreover be liable to a civil action for the amount of such license tax.

"Sec. 10th. All license heretofore granted for any kind of business or occupation herein specified, not yet expired, shall be and remain in full force until the time for which the same were granted shall have fully expired."

The case was referred to a referee agreed on by the parties to take the testimony and find the facts. The referee heard the testimony and found the facts as follows:

"1st, That Lloyd D. Bennett, respondent herein, is treasurer of the city of Plattsmouth.

" 2d, That as such treasurer the said Lloyd D. Bennett collected the moneys in question in this suit.

" 3d, That said Lloyd D. Bennett deposited the moneys in question in this cause in the 'Special License Tax Fund" of the city of Plattsmouth.

" 4th, I find that a portion of said moneys in dispute, to-wit, the sum of $3,500, was paid by the seven saloons of this city, being the sum of $500 each.

" 5th, That the city of Plattsmouth issued to James W. Sage, relator herein, the two orders or warrants on the 'Special License Tax Fund,' as alleged in relator's petition. That relator presented the same to said Lloyd D· Bennett, respondent herein, and demanded payment thereof. That said Bennett refused to pay the same, and endorsed on each of said warrants "presented for payment and not paid for want of funds, June 24th, 1885."

" 6th, I find that at the time said warrants were so presented for payment, payment refused and so endorsed, that there was in the hands of Lloyd D. Bennett, city treasurer of Plattsmouth, and to the credit of the 'Special License Tax Fund,' the sum of $3,500.

" 7th, I find that under ordinance 115, each person desiring to engage in the liquor business was required to pay into the school fund $500, and that under ordinance 132 a business tax or special license tax of $500 was levied

upon each and every person engaged in the liquor or saloon business.

"'8th, I find that the moneys in this suit were paid into the city treasury by the several saloon keepers of this city under ordinance 132, at the same times that they paid into the city treasury their $500 respectively for their saloon or liquor license under ordinance 115; and that they each paid said sums under said ordinances Nos. 115 and 132 without the same being demanded of them by the city, and that the same was paid voluntarily on their part.

" 9th, I find that no saloon keeper or liquor dealer paid the $500 under ordinance 115 and demanded his liquor license without having paid his $500 into the special license tax fund.

" 10th, I find there was no order or resolution of the city council, nor any requirement on the part of the city of Plattsmouth, by which a person desiring to engage in the liquor or saloon business in said city was compelled to pay into the city treasury $500 under ordinance 132 before the city would issue him a liquor license under ordinance 115. As to whether the city would, as a matter of fact, have issued a license under ordinance 115 without the applicant first having paid $500 into the city under ordinance 132, I am unable to find, for the very reason that no evidence has been introduced showing that such an application had been made since the passage and taking effect of said ordinance 132."

1st. The defendant excepts to the third finding of fact, "that the respondent Bennett deposited the moneys received as special license by Bennett in the special license tax fund. The same is not supported by the evidence, and is without foundation in fact."

In Bennett's report under oath, made to the council of the city of Plattsmouth on the 10th day of August, 1885, which is attached to the petition and made a part thereof, we find the following:

"SPECIAL LICENSE FUND.

Amount on hand June 30th............$3524.92
Amount collected in July...............   10.00
                                        ──────────
                                        $3534.92 "

It is alleged that this report is not identified, and there is no evidence that it was considered by the referee. This is a mistake, however, as the seventh paragraph of the petition contains the following allegation:

"Plaintiff further charges, that under and by virtue of said ordinance No. 132, and under and by virtue of the law in force in this state, a general occupation or business tax was levied upon all occupations and business in said city of Plattsmouth, uniform in respect to the classes of occupation or business upon which said tax was levied; and a large amount of such tax has been collected and paid into the treasury of the city of Plattsmouth, and passed and credited to the 'special occupation' or 'license tax fund' of said city, to-wit, to the amount of at least $3534.92, which amount your relator here avers and charges has been collected of and from the different classes of business and occupations in said city of Plattsmouth by the city treasurer of said city as occupation tax for the year 1885, and which money is deposited in and belongs to the special license tax fund of said city, and which fund is in the possession and under the control of said Lloyd D. Bennett, as city treasurer of Plattsmouth, as evidenced by the report of said city treasurer under oath, made to the city council of Plattsmouth City at a regular meeting of said city council held on the 10th day of August, A.D. 1885. A copy of said report is hereto attached and made a part of this petition." The report is attached to the petition. This fact, no doubt, was overlooked when the objection was made. The third finding is fully sustained by the evidence.

2d. That "the sixth finding of fact is without evidence

to support the same, and is not supported by the evidence submitted."

The sixth finding is, that there was in the hands of the defendant in the "special license tax fund" the sum of $3,500, and is answered by the report of the treasurer himself, made but a short time before the action was instituted, showing more than that sum in his hands in that fund. The objection, therefore, is untenable.

3d. "That tenth finding of fact is not supported by the evidence submitted, and is without evidence to sustain the same, is vague, indefinite, and uncertain."

The tenth finding is, in effect, that there was no order, resolution, or requirement of the city of Plattsmouth by which a person desiring to engage in the saloon business was compelled to pay $500, under ordinance 132, before he could obtain a license under ordinance 115.

Upon this point a large amount of testimony was taken, and in no instance does it appear that the payment of $500, under ordinance 132, was made a condition precedent to the issue of license under ordinance 115.

John D. Simpson, who was city clerk from 1877 to 1885, testifies that no such condition was imposed, and that the occupation tax was frequently paid in city warrants. The present city clerk testifies that no such condition was imposed, and three members of the city council testify to the same facts.

Three saloon keepers were sworn, who testify in substance that, while they each paid the $1,000 to the city treasurer at one time, that they understood that one-half was paid under ordinance 132. Questions were ingeniously framed, so that they would answer that the entire sum was paid as a condition precedent to the issuing of a license under ordinance 115, but failed to elicit proof of that fact, all that was shown being that at the same time they paid for and received a license under ordinance 115 they paid the amount charged under ordinance 132, it being then due.

The tenth finding, therefore, is in harmony with the testimony and is fully sustained by it, and the objection is not well taken.

But even if all these exceptions were sustained, still, under the findings to which no objection is made, the relator would be entitled to the writ. Thus, the first and second findings are, in substance, that the defendant is treasurer of Plattsmouth, and as such collected the moneys in controversy, and now has them. The fourth finds the amount received; the fifth, that the relator is the holder of two orders or warrants on the "special license tax fund," which the defendant has refused to pay. The seventh finding is, that each liquor dealer was required to pay $500 into the school fund, under ordinance 115, for his license; and under ordinance 132 a "business tax or special license tax of $500 was levied upon each and every person engaged in the liquor or saloon business." The eighth finding is, that the moneys in controversy were paid into the city treasury under ordinance 132 at the same time they paid the sums for license under ordinance 115, "without the same being demanded of them by the city, and that the same was paid voluntarily on their part." These facts being conceded to be true by the failure to except to the same, are sufficient to authorize the court to grant the writ. The fact that the money in controversy was paid in voluntarily by the parties, under ordinance 132, and is now in the treasury in the "special license tax fund," imposes the duty on the defendant of paying out the same on orders drawn on that fund. The money being paid under ordinance 132 must be applied to the purposes for which it was collected.

In *State v. Wilcox*, 17 Neb., 219, the second section of the ordinance virtually fixed the license at $1,000, $500 of which was to be used as a license fee, and $500 as an occupation tax. The fourth section made the payment of the license fee and the occupation tax a condition precedent to

the granting of license. It is said (page 224): "It will be observed that the entire sum of $1,000 is required to be paid by the applicant for license, to enable him to obtain the same. No part of this sum is obtained as a tax, but as a condition of obtaining the license. The $1,000 is paid as a whole for the license—not a part for license and a part as tax—because without the payment of the entire sum the license would not be issued." There is a plain intimation in the opinion that an occupation tax not imposed as a condition of obtaining the license would be sustained.

Sec. 1, art. 9 of the constitution, authorizes the legislature "to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, innkeepers, liquor dealers, toll bridges, ferries, insurance, telegraph, and express interests or business, venders of patents, in such manner as it shall direct by general law uniform as to the class upon which it operates."

Subdivision VIII. of section 69 of the "act to provide for the organization, government, and powers of cities and villages," which took effect Sept. 1, 1879, authorizes such cities "to raise revenue by levying and collecting a license tax on any occupation or business within the limits of the city or village and regulate the same by ordinance. All such taxes shall be uniform in respect to the classes upon which they are imposed," etc. The next subdivision authorizes them "to license, regulate, or prohibit the selling or giving away of any intoxicating, malt, vinous, mixed, or fermented liquor," etc. Comp. St., ch. 14.

The power, therefore, to impose an occupation tax on saloons is clearly conferred both by the constitution and statute.

Judge Cooley, in speaking of this species of taxation, says: "If a revenue authority is what seems to be conferred, the extent of the tax when not limited by the grant itself must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual

mode in which its legislative authority is exercised; but the grant of authority to impose fees for the purposes of revenue would not warrant their being so heavy as to be prohibitory, thereby defeating the purpose," etc.  Cooley on Taxation, 408.

The constitution of Michigan contains a provision that, "the legislature shall not pass any act authorizing the grant of license for the sale of ardent spirits or other intoxicating liquors."  (Art. 4, § 47.)

In 1875 the legislature of that state passed an act imposing a specific tax on liquor dealers.  The validity of this tax was denied, and the question came before the supreme court of that state in *Youngblood v. Sexton*, 32 Mich., 406.  The opinion of the court was delivered by Cooley, J., and contains an elaborate review of the authorities, the tax being sustained.  It is said (page 425): "Taxes upon business are usually collected in the form of license fees; and this may possibly lead to the idea that seems to prevail in some quarters, that a tax implied a license, but there is no necessary connection whatever between them.  A business may be licensed and yet not taxed, or it may be taxed and yet not licensed.  And so far is the tax from being necessarily a license that provision frequently is made by law for the taxation of a business that is carried on under a license existing independent of the tax.  Such is the case where cities under proper legislative authority tax occupations which are carried on under licenses from the state.  *Ould v. Richmond*, 23 Gratt., 464.  *Napier v. Hodges*, 31 Texas, 287.  *Cuthbert v. Conly*, 32 Geo., 211.  *Wendover v. Lexington*, 15 B. Mon., 258.  See also *Home Ins. Co. v. Augusta*, 50 Geo., 530.  The license confers a privilege, but it is not perceived why a privilege thus conferred should not be taxed as much as any other.  The federal laws give us an illustration of the taxation of illegal traffic.  A case in point was that of the taxation of the liquor traffic in this state previous to the repeal of the prohibitory law;

the federal law found a business in existence and it taxed it
without undertaking to give it any protection whatever. *Mc-
Guire v. Com.*, 3 Wall., 387. *Pervear v. Com.*, 5 Wall., 475.
What would have prevented the state from taxing the same
traffic at the same time? Is it any more restricted in the
selection of subjects for taxation than the general govern-
ment? "

In *Ould v. Richmond*, 23 Gratt., 464, an ordinance im-
posing a business tax upon lawyers was sustained, although
the persons taxed held a license from the state to practice law,
and the municipal tax went to nullify it. Anderson, J.,
says: "It (the license to practice law) is a vested civil right,
yet it is as properly a subject of taxation as property to
which a man has a vested right."

In *Napier v. Hodges*, 31 Texas, 287, under an act of
the legislature of October, 1866, a retail dealer in intoxi-
cating liquors in less than one quart was required to exe-
cute and deliver to the county treasurer a bond payable
to the county judge with two or more sureties with certain
conditions, and to pay into the county treasury a license
tax of $300 per annum, whereupon the county clerk was
required to issue to the applicant a license to sell intoxicat-
ing liquors. In November, 1866, the legislature passed
another act by which the retailer who is " pursuing or about
to pursue this occupation of selling such liquors in quantities
less than a quart, is assessed with a tax at the rate of $300
per annum for the benefit of the state treasury," and was
required by another act thereafter passed and approved to
make application to the assessor and collector and pay the
second amount, the tax to him prior to pursuing such oc-
cupation, under a penalty of fifty per cent and costs for a
failure to do so within five days thereafter. The court
held that all these acts were valid and that the second was
a legitimate exercise of the taxing power.

In *Wendover v. Lexington*, 15 B. Mon., 258, it was held
that the legislature had power to give to cities within the

state authority to tax for revenue purposes lottery offices for the sale of lottery tickets within their limits, although the lotteries may have been authorized by the legislature.

In the *License tax cases*, 5 Wall., 462, it was held that licenses under the act of congress of June 30, 1864, to provide internal revenue to support the government and the acts amendatory thereof, conveyed to the licensee no authority to carry on business within the state, and that the requirement was only a mode of imposing taxes; and in *Purvear v. Com.*, Id., 475, it was held that a license from the federal government for the sale of intoxicating liquors did not abridge the power of the state to tax or prohibit the licensed business.

In *St. Louis v. Spiegel*, 75 Mo., 145, a license fee had been imposed on the keepers of meat shops in St. Louis, which was $100 in one part of the city and $25 in another. The court held that the authority to impose the tax was clearly conferred but that it must be uniform, and because of want of uniformity the act was held to be invalid.

In *Glasgow v. Rowse*, 43 Mo., 479, a tax of three per cent was imposed on the salaries of all officers who were exempt from military duty in consequence of such offices, and two per cent on the salaries and incomes of all other persons, provided such salaries or incomes exceeded $600. The act was sustained, notwithstanding a provision in the constitution that all taxes should be uniform.

In *Kitson v. The Mayor*, 26 Mich., 325, specific taxes on saloon keepers in Ann Arbor were sustained, although in the form of licenses, the constitution of that state prohibiting the licensing of the sale of intoxicating liquor; and to the same effect is *Walcott v. The People*, 17 Mich., 68.

In *Burlington v. Putnam Ins. Co.*, 31 Iowa, 102, the city charter authorized the city council of Burlington to charge such sums " as they shall deem expedient and just." Under a resolution of the city council insurance companies

or agencies whose premiums amounted to less than $500 were required to pay $5, where the amount was $500 but less than $1,000 the charge was $10, and all in excess of $1,000 the charge was $15. The authority was upheld.

In *People v. Martin*, 60 Cal., 153, an occupation tax in the form of a license tax was imposed on the defendant, who was engaged in the business of selling goods, wares, and merchandise in the county of Santa Cruz. The court held that under the provisions of the constitution the tax must be imposed by the municipality in which the defendant resided, and not by the county.

Many other cases to the same effect could be cited, but in view of our constitution and statute it seems unnecessary, as the power to impose taxes upon certain occupations, including liquor dealers, is expressly conferred. This is entirely independent of the license to sell intoxicating drinks. To procure a license for that purpose the applicant must be a man of respectable character and standing, and a resident of the state. To obtain a license he must present the petition of thirty resident freeholders of the town or precinct where the sale of such liquor is to take place to the proper authority. Notice must then be given, and if any objection, protest, or remonstrance is filed against the issuing of license, a hearing must be had thereon from which an appeal may be had to the district court. If a license is granted the applicant must pay at least the sum required by the licensing board, which in no case can be less than $500, and give a bond to the state in the sum of $5,000, with two good and sufficient sureties, freeholders of the county. The law also makes the licensee liable for all damages that the community or individuals may sustain in consequence of such traffic. The law also imposes heavy penalties upon any one who, without having complied with the provisions of the law, shall sell or give away any intoxicating liquors.

The statute, in fact, is a complete prohibitory law un-

less a license is obtained, and then the licensee is bound by stringent provisions, and himself and bondsmen made pecuniarily liable for any violation thereof. The design of the law was to prohibit the traffic unless at least thirty resident freeholders of the town or precinct should petition for license, and then, if license was granted, to regulate the traffic by placing it in the hands of respectable persons, with adequate indemnity for any violation of the conditions of the bond. But this does not preclude the power of the state to permit municipalities to impose an occupation tax on those engaged in the business. It is well known that the traffic produces destitution, misery, and crime, fills poor-houses and prisons, and adds largely to the burdens of tax payers in every municipality where license is granted. It would seem but justice that the business should bear at least a part of the burden, and no doubt this provision was retained in our constitution with this end in view.

The particular form in which this occupation tax may be imposed, whether by adding a penalty to it if not paid in a certain number of days, as in the case cited from Texas, or otherwise, is not material, so that its payment is not made a condition precedent to the issuing of the license. Whether such penalty could be enforced in this state is not now before us. We hold, therefore, that the city of Plattsmouth had authority to impose an occupation tax on saloon keepers, and that the finding of the referee that the $3,500 was paid into the city treasury as an occupation tax is fully supported by the evidence. The writ will therefore be issued as prayed.

WRIT AWARDED.

THE other judges concur.