MAGNEAU ET AL V. CITY OF FREMONT.

[FILED NOVEMBER 25, 1890.]

1. **De Facto Officers.**   The acts of a *de facto* officer are valid and binding, so far as the interests of the public or third persons are. involved.

2. **Cities: COUNCIL.**   A MEETING of the city council, held at a time other than that fixed by ordinance for a regular meeting, is valid, if the mayor and all the councilmen are present and act as a body, notwithstanding the meeting was not called by the mayor or two councilmen.

3. ———: ———: ADJOURNED SESSIONS.   Where such a meeting is adjourned to a specified date, and at such date a quorum of the council meet, they may transact any business within the powers conferred by statute.

4. ———: ———: QUORUM.   In cities of the second class having more than five thousand inhabitants, the council, when in lawful

| 30 | 843 |
| 32 | 544 |
| 38 | 843 |
| 39 | 698 |
| 30 | 843 |
| 48 | 877 |
| 30 | 843 |
| 51 | 874 |
| 52 | 217 |
| 55 | 313 |
| 55 | 489 |
| 55 | 523 |
| 30 | 843 |
| 56 | 580 |
| 56 | 581 |
| 30 | 843 |
| 61 | 493 |

Magneau v. Fremont.

session, may pass any ordidance, by the concurring vote of a majority of all the members elected to the council, or by the affirmative vote of one-half of the whole number of councilmen, with the concurrence of the mayor.

5. ———: ———: ———. The city council of the city of F. is composed of eight members. The mayor and four councilmen voted in favor of the passage of a certain ordinance, three members voted nay, and one was absent. *Held,* That the ordinance was legally passed.

6. ———: OCCUPATION TAX: CONSTITUTIONALITY. The provision of subdivision 8 of section 52, article 2, chapter 14, Compiled Statutes, authorizing cities to levy and collect occupation taxes, is not repugnant to sections 1 and 6 of article 9 of the constitution.

7. ———: ———: ———. Where a city ordinance imposes a fixed sum upon each of the various avocations therein named, and makes no exceptions in favor of or against any person who may desire to pursue the business taxed, *held,* not to violate the rule respecting uniformity prescribed by the constitution and statute.

8. ———: ———: PENALTY: ORDINANCE VOID IN PART. While the penal provision for the enforcement of an ordinance imposing an occupation tax is void, it does not invalidate the remainder of the ordinance.

APPEAL from the district court for Dodge county. Heard below before MARSHALL, J.

N. H. Bell, and C. Hollenbeck, for appellants, cited: Cooley, Const. Lim. [2d Ed.], 116; *Mays v. Cincinnati,* 1 O. St., 268; *R. Co. v. Columbus Co.,* Id., 77; *State v. Wilcox,* 45 Mo., 458; Locke, Civ. Gov., sec. 142; *State v. Mayor,* 38 N. J. L., 110; *State v. Green,* 27 Neb., 64; 1 Waterman, Corp., 347; *Hildsley v. McEnters,* 19 Am. Dec., 61, note 68; *Green v. Burke,* 23 Wend. [N. Y.], 490; *People v. Hopson,* 1 Denio [N. Y.], 574; 1 Dillon, Mun. Corp. [3d Ed.], 301, and citations; *Ex parte Wolf,* 14 Neb., 24.

*Frank Dolezal,* and *W. H. Munger, contra,* cited cases referred to in opinion.

NORVAL, J.

This suit was brought in the district court of Dodge county, to enjoin the collection of certain occupation taxes imposed upon various occupations within the city by ordinance No. 231, and to have said ordinance declared void. The district court found the issue in favor of the defendants, and dismissed the action.    The plaintiffs appeal.

The city of Fremont is a city of the second class having over 5,000 inhabitants.    It is divided into four wards, and under the act or charter which governs cities of that class, is entitled to eight councilmen, two from each ward.    At the general election held in said city on the first day of April, 1890, E. N. Morse was elected councilman from the Second ward as the successor to J. J. Lowry, and D. Hein was elected from the Third ward as the successor to C. A. Peterson.    At a session of the city council held on April 3, 1890, the votes cast at the last city election were canvassed and Morse and Hein were declared elected.    This meeting was adjourned to April 4, when the ordinance in question was introduced and read for the first time.    An adjourned session was held on April 5, when the ordinance was read the second time, and the meeting was adjourned to April 9.    On that date the council met pursuant to adjournment when the ordinance was read a third time and passed.    There were present and participated at this session, besides the mayor, councilmen Biles, Esmay, Plambeck, Harms, Wilcox, Peterson, and Lowry.    On April 7, prior to the passage of this ordinance, the councilmen elect, Morse and Hein, qualified.

It is contended by the appellants that the ordinance was never legally passed for the following reasons:

"First—That there were not present at its passage a quorum of the legal members of the city council.

"Second—That a sufficient number of the legal members of that body did not vote in favor of the passage of the ordinance.

" Third—Because the mayor had no legal right to vote upon its passage.

" Fourth. Because the ordinance was passed at a meeting at which the council had no authority to pass an ordinance."

The first two objections will be considered together. It is conceded that all who participated at the meeting when the ordinance was adopted were legal members of the council, except Peterson and Lowry, whose right to act is questioned, on the ground that their successors had previously qualified on April 7. The statute requires that two-thirds of all the members of the council shall be necessary to constitute a quorum for the transaction of business. It is obvious that if Peterson and Lowry could not lawfully act with the council at that meeting, no quorum was present and the ordinance is invalid.

Section 12 of article 2, chapter 14, Compiled Statutes, provides that in cities of the second class having more than 5,000 inhabitants there shall be elected annually in each ward one councilman, who shall hold his office for a term of two years, and until his successor shall be elected and qualified. There being no statutory provision fixing a particular date when the term of office of a councilman shall begin, it is believed that the provisions of said section 12 control, and that the term of such officer commences immediately after the person elected has qualified.

While Morse and Hein had qualified, they had not, as yet, taken their seats in the council, or participated in the proceedings of that body. The names of Lowry and Peterson appeared upon the roll of members, and they were recognized as such by other members of the council, as well as by the mayor and city clerk. They took part in the proceedings of the council on April 9th without objection from any one, although Morse and Hein were at the time in the council chamber. We conclude, therefore, that Messrs Morse and Hein were *de jure* officers and that Lowry and Peterson were *de facto* members of the city council.

The cases are numerous which hold that the acts of a *de facto* officer, so far as they involve the interests of the public or third persons are as valid and binding as though he was an officer *de jure.*

In *Ex parte Johnson,* 15 Neb., 512, the petitioner had been tried upon a criminal complaint before a justice of the peace, convicted and fined, and ordered committed to jail until the fine and costs were paid. He applied to this court for a writ of *habeas corpus,* alleging that the justice of the peace before whom he was convicted, usurped said office without authority of law. It was held that as the justice was a *de facto* officer his acts were valid, and the writ was denied.

In *State, ex rel., v. Gray et al.,* 23 Neb., 365, it was held that "the acts of councilmen *de facto,* within the power of the statutes, will be recognized and upheld."

In *Braidy v. Theritt,* 17 Kan., 468, the defendant exercised the duties of councilman of the city of Wathena after his successor had been elected and qualified. It was held that Theritt was a *de facto* officer.

The case of *Morton et al. v. Lee,* 28 Kan., 286, was a suit brought by Lee to enjoin the collection of a judgment rendered by one A. J. Buckland, as justice of the peace after his term of office had expired, and after the election and qualification of his successor. It was held that Buckland was a justice of the peace *de facto,* and his acts as such were valid. The following cases support the same doctrine: *Norton v. Shelby Co.,* 118 U. S., 445; *Carli v. Rhener,* 27 Minn., 292; *Leach v. People,* 122 Ill., 420; *People v. Bangs,* 24 Ill., 184; *Trumbo v. People,* 75 Ill., 561.

It follows from the reason of these cases that the acts of Lowry and Peterson are valid, and that there was a quorum of the city council present at the time the ordinance was adopted. The authorities cited in the brief of plaintiffs do not, in any manner, conflict with the rule for which we contend in this case, but sustain the proposition that the

acts of officers *de facto* are invalid as to the person performing the duties of the office, and are no protection to him.

It appears from the record, that four members of the council and the mayor voted in favor of the passage of this ordinance—three voted against it, and one was absent. Whether a sufficient number voted in the affirmative, depends upon whether the provisions of section 18, or those of section 30 of article 2 of chapter 14, Compiled Statutes, control and govern cities of the class of Fremont, in the passage of ordinances.

Section 18 provides that "The mayor shall preside at all meetings of the city council, and shall have a casting vote when the council is equally divided, except as otherwise herein provided, and none other, and shall have the superintending control of all the officers and affairs of the city, and shall take care that the ordinances of the city and of this act are complied with."

Section 30 provides that "On the passage or adoption of every resolution or order to enter into a contract by the mayor and council, the yeas and nays shall be called and recorded; and to pass or adopt any by-law, ordinance, or any such resolution or order, a concurrence of a majority of the whole number of members elected to the council shall be required; *Provided*, That the concurrence of the mayor and one half of the whole number of members elected to the council shall be sufficient to pass any such ordinance, by-law, resolution, or order."

Section 18, standing alone, sustains the construction contended for by the plaintiffs and appellants, that the mayor can only vote when the council is equally divided. The language used in section 30 is plain and explicit, "that the concurrence of the mayor and one-half of the whole number of members elected to the council shall be sufficient to pass any such ordinance."

In construing statutes, effect, if possible, must be given

to every part of the law.    Effect can be given to all the provisions of both sections by holding that the section first above quoted does not apply to the passage of ordinances, by-laws, or resolutions, but relates to the other proceedings of the council.    Holding, as we do, that section 30 authorizes, when a quorum of the council is present, the passage of ordinances by the affirmative vote of one-half of all the members of the council, with the concurrence of the mayor, the ordinance under consideration received a sufficient affirmative vote to adopt the same.

The appellants claim that the case of *State v. Gray*, 23 Neb., 365, conclusively settles the present case in their favor.    We do not think so.    The court, in that case, had under consideration secs. 10, 76, and 79 of the act which governs and controls cities of the second class containing a population of less than 5,000, being article 1, chapter 14 of Compiled Statutes.    The only difference between section 10, construed in that case, and section 18, involved in this, is that the former section does not contain the words "except as otherwise herein provided."    Sections 76 and 79 each provides that to pass an ordinance it requires the concurrence of a majority of all the members elected to the council.    Neither of said sections provides "that the concurrence of the mayor and one-half of the whole number of members shall be sufficient to pass any such ordinance."    In that respect the provisions of said sections are different from those contained in section 30, which we have been considering.    The court in *State v. Gray, supra,* held, and we think correctly, that section 10 therein construed did not apply to the passage of ordinances, and that it required the concurrent vote of the majority of whole number of members of the council to adopt an ordinance. It is obvious that the provisions of section 30 and those of sections 76 and 79 are so different that the decision reported in 23d Nebraska does not in any manner conflict with the views expressed in this opinion, but on the other

54

hand sustains us in holding that section 18, copied above, does not refer to the passage of ordinances.

It is also claimed that the city council had no authority to pass ordinance 231 at the meeting at which it was adopted. Ordinance No. 3 of the city of Fremont provides that the regular meetings of the council shall be held on the last Tuesday of each month. It is conceded that the ordinance under consideration was not acted upon at such a meeting, nor at any adjourned session thereof.

It is provided by ordinance No. 79 that the mayor and council shall meet on the Thursday following each city election and canvass the returns of the votes cast at such election. A meeting was held April 3, when the votes cast at the city election held on April 1 were canvassed. Prior to this meeting a call was issued by the mayor for a meeting of the council on April 3 to canvass the votes of the city election and to transact any business that might lawfully come before the council. At the meeting held on April 3, the mayor and all the members of the council were present except Archer. This meeting was adjourned to the following day, at which time, the mayor and all the councilmen being present, the ordinance was introduced, read the first time, and the meeting adjourned to April 5. On that date there were present the mayor and all the councilmen except Plambeck. The ordinance was then read a second time, and an adjournment taken to April 9. On the last named date, all the members of the council being present except Archer, the ordinance was read a third time and passed.

The meeting held on April 3 was for the special purpose of canvassing the returns of the city election. Had it been a regular meeting then any corporate business could have been lawfully transacted at any adjourned session thereof. The statute authorizes the mayor or any two councilmen to call special meetings. Whether the call must specify the object of such a meeting, the statute is silent, and the

decisions of the courts are conflicting upon that question. At any rate the purpose and object of the call is to apprise the members of the proposed meetings so that they may attend. So it seems clear to us that when all the members of the council and the mayor meet and act as a body, they may at such meeting, or at any adjourned session thereof, transact any business within the powers conferred by law, notwithstanding no written call for the meeting was made by the mayor or two councilmen, or in case one was made which failed to specify the purpose of the meeting.

At the session held on April 4, at which the ordinance was introduced and read, the mayor and all the members of the council were present and acted. All the members were notified of the meeting at which the ordinance was read the second time, by the adjournment of the previous meeting when all were present, and all had notice of the meeting at which the ordinance was passed, by the adjournment of the meeting held on April 5, except Plambeck, and he was present and participated at the meeting when the ordinance was finally passed. In view of these facts, we must hold that the council was in lawful session when each step was taken in passing this ordinance.

It is urged that subdivision 8 of sec. 52 of the act governing cities of the second class having over five thousand inhabitants, which authorizes a city to levy and collect a license tax on any occupation or business carried on within the corporate limits, violates sections 1 and 6 of article 9 of the constitution.

Section 1 of said article provides that "The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property and franchises, the value to be ascertained in such manner as the legislature shall direct; and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, innkeepers, liquor

·dealers, toll bridges, ferries, insurance, telegraph, and express interests or business, vendors of patents, in such manner as it shall direct by general law, uniform as to the class upon which it operates."

Section 6 provides that "The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessments, or by special taxation of property benefited. For all other corporate purposes all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

It has been the uniform holding of this court that the constitution is not a grant but a restriction of legislative power, and that the legislature may legislate upon any subject not inhibited by the constitution. (*State v. Lancaster County*, 4 Neb., 537; *State v. Dodge Co.*, 8 Id., 124; *Hanscom v. City of Omaha*, 11 Id., 37; *State v. Ream*, 16 Id., 685; *Shaw v. State*, 17 Id., 334.)

In *State v. Bennett*, 19 Neb., 191, this court had under consideration sec. 1, article 9, of the constitution, and subdivision VIII of section 69 of "An act to provide for the organization, government, and powers of cities and villages," passed in 1879, which empowers cities containing less than five thousand inhabitants to impose an occupation tax. It was held that the constitution and statute both conferred the power to levy and collect such a tax.

While the legislature has authority to enforce a tax upon occupations, it is evident that section 1 of the constitution above referred to does not prohibit the legislature from conferring, by general law, power upon cities and villages to impose occupation taxes for municipal purposes. The only restriction imposed is that the taxes shall be uniform as to class.

The above quoted section 6 of the constitution was not

referred to or considered by the court in *State v. Bennett, supra.* It therefore only remains to be determined whether the provision of that section prohibits the legislature from conferring upon municipal corporations the power to levy occupation taxes.

It is claimed by appellants that this section of the constitution has reference to taxation by valuation. We do not think so. The language used is: "Such taxes shall be uniform in respect to *persons* and *property.*" If it was the intention of the framers of the constitution to limit a municipal corporation to the imposing of taxes on property, why was the word "persons" specified in the section? It was evidently inserted for the purpose of authorizing the levy and collection of occupation taxes.

Sections 1 and 6 of article 9 of our constitution are identically the same as sections 1 and 9 of the ninth article of the constitution of Illinois, which were construed by the supreme court of that state in 1873, before the adoption of the constitution of this state, in *Wiggins v. City of Chicago,* 78 Ill., 378. Mr. Justice Walker, in delivering the opinion of the court, observes: "The ninth section, article 9, of the constitution declares that the general assembly may vest the municipal authorities of cities, towns, and villages with authority to assess and collect taxes for corporate purposes; 'but such taxes shall be uniform, in respect to persons and property within the jurisdiction of the body imposing the same.' To give full effect to this provision, we must hold that it embraces more than the mere assessment and imposition of a uniform tax on property. It evidently was designed to include the various modes of collecting taxes of persons pursuing various avocations. And in the first section of the same article, the legislature is authorized to tax peddlers, auctioneers, etc. The tax here provided for is manifestly the sum of money which shall be paid to enable them to pursue their calling. Their property was required to be assessed by the first

clause of the section, as it falls within the language employed, hence it follows that the tax last referred to, as applied to the classes of persons enumerated, is a personal tax, imposed upon the person exercising the calling, and has no reference whatever to his property."

We are clearly of the opinion that the provision of subdivision VIII of section 52, article 2, chapter 14, Compiled Statutes, is not repugnant to the constitution.

It is, however, urged that the ordinance is void because the taxes imposed by it are not uniform in respect to the classes upon which they are levied. The ordinance imposes a fixed sum upon each of the various avocations therein named. The fact that it does not classify each business and graduate the amount that shall be paid by the person pursuing an avocation, according to the amount of business he shall do, is not a violation of the rule of uniformity prescribed by both the constitution and statute. It is not an income tax, but a license fee or tax for the privilege of carrying on business in the city. The ordinance makes no exceptions in favor of or against any one carrying on the business taxed, but operates uniformly on the class to which it applies.

Section 7 of the ordinance provides that any person violating any of its provisions shall, on conviction thereof, be fined not less than five nor more than fifty dollars, and be committed until the fine and costs be paid. Under the decision of this court in *State v. Green*, 27 Neb., 64, the penal provision for the enforcement of the ordinance is void. But that does not invalidate its other provisions, as the valid part is a complete act and is not dependent upon the void portion. (*State v. Lancaster Co.*, 6 Neb., 474, *State v. Hardy*, 7 Id., 377; *State v. Lancaster Co.*, 17 Id., 85; *State v. Hurds*, 19 Id., 323; *Muldoon v. Levi*, 25 Id., 457; *Messenger v. State*, Id., 674.) The judgment of the district court is

AFFIRMED.

THE other judges concur.