GERMAN-AMERICAN FIRE INSURANCE COMPANY v. CITY OF MINDEN.

FILED JUNE 3, 1897. No. 8962.

1. **Insurance: LICENSE TAX.** Chapter 38, Session Laws, 1895, authorizing the imposition of a license tax on insurance companies for the purpose of maintaining volunteer fire departments, cannot be construed as in any way extending or modifying the powers of cities of the second class in that particular, because to so construe it would render the act in conflict with section 11, article 3, of the constitution.

2. ————: ————. By force of chapter 14, article 1, Compiled Statutes, such cities have, however, independently of the act of 1895, power to impose an occupation tax on fire insurance companies doing business within the city and to apply the proceeds of that tax to the maintenance of volunteer fire departments.

3. **License Tax: ENFORCEMENT.** The payment of such tax cannot, however, be required as a condition precedent to doing business, nor can payment of the tax be enforced by punishing, criminally, persons who do business without first paying the tax.

4. ————: ————. When the law imposing a tax provides a special means for enforcing it, the method so provided is generally exclusive, and if the only method adopted be illegal, the courts cannot substitute a different and legal method.

5. **Municipal Corporations: OCCUPATION TAX: ORDINANCE.** A city ordinance imposed an occupation tax and provided only an illegal method for its enforcement. *Held*, That the whole ordinance was thereby rendered inoperative.

ERROR from the district court of Kearney county. Tried below before BEALL, J. *Reversed.*

*Greene & Breckenridge*, for plaintiff in error.

*L. W. Hague* and *Stewart & Munger, contra.*

IRVINE, C.

The petition of the city of Minden against the German-American Fire Insurance Company alleged that Minden is a city of the second class maintaining a volunteer fire department, and that the defendant is a corporation engaged in the business of fire insurance in said city; that on the 6th of January, 1896, the mayor and council enacted an ordinance requiring all fire insurance companies doing business in said city to pay a license tax of $3 per annum, due and payable on the 1st day of May of each and every year; that the defendant failed and refused to pay the tax. The prayer was for judgment for the sum of $3 and interest. Made a part of the petition was a copy of the ordinance, as follows:

"An ordinance to impose a special license tax on fire insurance companies doing business in the city of Minden, Nebraska, for the support and maintenance of the volunteer fire department of said city.

"*Be it ordained by the Mayor and Council of the City of Minden, Nebraska:*

"Section 1. That for the use, support and maintenance and benefit of the volunteer fire department of the city of Minden, Nebraska, regularly organized under the laws of the state of Nebraska, a license tax of three dollars per annum be and the same is hereby levied upon each and every fire insurance company, corporation, or association doing business in the city of Minden, Nebraska.

"Section 2. Such license tax shall be due and payable on the first day of May of each and every year, and upon payment thereof to the city treasurer, and presentment of his receipt to the city clerk, a license shall be issued by the city clerk authorizing the insurance company paying same to do and transact business in the city of Minden for one year.

"Section 3.   It shall be unlawful for any fire insurance company, corporation, or association to write, or cause to be written, any policy of fire insurance without first paying the license tax and procuring license as hereby provided.

"Section 4.   It shall be unlawful for any agent or solicitor for any fire insurance company, corporation, or association to solicit, write, or cause to be written any policy of fire insurance for or in the name of any fire insurance company, corporation, or association unless the said fire insurance company, corporation, or association for which said insurance shall be or may be solicited, written, or caused to be written by such agent or solicitor, shall have first paid the license tax and have procured the license herein required.

"Section 5.   The license tax herein required shall be due and payable on the first day of May of each and every year thereafter.

"Section 6.   Any person, firm, corporation, association, solicitor, or agent violating any of the provisions of this ordinance shall be deemed guilty of misdemeanor, and upon conviction thereof shall pay a fine of not less than five dollars and not more than one hundred dollars.

"Section 7.   This ordinance shall be in force and take effect from and after its passage and publication as by law provided."

A general demurrer to the petition was overruled, and the defendant electing to stand on the demurrer, judgment was entered for the city.   The defendant prosecutes this proceeding, assigning as error the overruling of the demurrer, and the question involved is the validity of the ordinance.

The city is governed by chapter 14, article 1, Compiled Statutes, and by subdivision 28 of section 39 of that article is authorized "to procure fire engines, hooks, ladders, buckets, and other apparatus, and organize fire engine, hook and ladder, and bucket companies, and to prescribe rules of duty and the government thereof, with such pen-

alties as the council may deem proper, not exceeding one hundred dollars, and to make all necessary appropriations therefor." By subdivision 8 of section 69 of the same article such cities are empowered "to raise revenue by levying and collecting a license tax on any corporation or business within the limits of the city or village, and regulate the same by ordinance; all such taxes shall be uniform in respect to the classes upon which they are imposed." In 1895 there was passed (Session Laws, 1895, ch. 38) "An act authorizing the municipal authorities of cities of the second class and villages to enact an ordinance to impose a special license tax on insurance companies for the support and maintenance of volunteer fire departments." By this act it was provided that such cities and villages shall have authority by ordinance "to impose a license tax of not more than $5 per annum on each fire insurance corporation, company, or association doing business in such city or village, for the use, support, and benefit of volunteer fire departments, regularly organized under the laws of the state of Nebraska regulating the same." The ordinance in question was undoubtedly enacted with a view to complying with the act of 1895. The plaintiff in error attacks the validity of both the act and the ordinance. The applicability of the act of 1895 may be briefly disposed of by the suggestion of a dilemma. The general statute, already quoted, in existence at the time this act was passed, conferred authority to impose a license tax on any occupation for the purpose of raising revenue. If the act of 1895 did not in any manner extend or modify that power, it was at most declaratory of the existing law, and may be disregarded. If, on the other hand, its purpose was to extend or modify the existing grant of power, it failed to comply with that portion of section 11, article 3, of the constitution which requires that "No law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed." It is claimed that the act can be

sustained as one complete in itself, but this is not true. It has for its manifest object merely the definition of the power of a certain class of municipal corporations on a particular subject, and that subject already covered by another statute. While it does not purport to be an amendatory act, it is clearly one in effect, and the legislature may not evade this constitutional provision merely by casting the act in the form of new legislation, if it be in fact amendatory in character. (*Board of Education of Aurora v. Moses*, 51 Neb., 288.)

We therefore proceed to consider the ordinance solely in the light of the charter provisions already quoted. It is conceded on all sides that in order to give efficacy to the ordinance it must be supported as an occupation tax, and not as a license. The authority of the legislature to empower municipal corporations to levy occupation taxes, and the validity of such taxes when so levied in pursuance of legislative authority, have been frequently affirmed. (*State v. Bennett*, 19 Neb., 191; *City of Columbus v. Hartford Ins. Co.*, 25 Neb., 83; *State v. Green*, 27 Neb., 64; *Magneau v. City of Fremont*, 30 Neb., 843; *Templeton v. City of Tekamah*, 32 Neb., 542; *Western Union Telegraph Co. v. City of Fremont*, 39 Neb., 692.) It is true that in *State v. Wheeler*, 33 Neb., 563, an act of 1889 attempting to accomplish the same object as the act of 1895 was declared unconstitutional, and it is also true that while the opinion states that its validity was attacked for a number of reasons, it does not show clearly for what particular reason the court held it bad; but by comparing the opinion, the syllabus, and the briefs in the case it is quite evident that it was held bad because it was an attempt by the legislature, not to empower municipal corporations to impose a tax for corporate purposes, but to impose by the legislature itself a tax for corporate purposes on the inhabitants and property of the municipal corporation, this being forbidden by section 7, article 9, of the constitution. This case in nowise implies any restriction on the power of the legislature to authorize municipalities to themselves im-

pose such taxes, and the decisions sustaining that power remain unquestioned. But it is contended that if such tax be imposed it must be for general corporate purposes, and its proceeds may not be restricted to a special use. We cannot see any force in this objection. In *State v. Bennett, supra,* the general right to impose such a tax was sustained under an ordinance providing that its proceeds should be kept in a special fund and used only for certain specified purposes. The maintenance of a volunteer fire department is a public purpose, and one within the express powers of cities of the second class, and we see no reason why, in providing the revenues for such a city, the governing body thereof may not make special provision for this particular expense. It is said that a tax imposed for a special purpose may only be sustained when that purpose is rendered a necessary object of government by reason of the property or business so specially taxed; and in support of that argument we are referred to cases sustaining taxes on saloons for the purpose of maintaining inebriate asylums and alms-houses, because saloons tend to create a necessity therefor; and also taxes upon teamsters to provide a fund to repair streets, on the ground that they make more than the average use of streets. We apprehend, however, that this basis of classification is too narrow. It undoubtedly affords a sufficient reason for discrimination, but not the only reason. Indeed, a special tax on teamsters to repair streets is not defensible alone on the ground that it is the teamsters who wear out the streets, but also upon the ground that they receive a special and peculiar benefit from the maintenance of good streets, and that they may therefore be justly required to pay more than the usual burden for this purpose. So with regard to insurance companies. An occupation tax has a special reason in their case. The corporeal property which they possess at places other than their main office usually consists at most of a leasehold interest in a small room, a desk and chair and other trifling office furniture, so that a property tax is wholly

disproportionate .to the advantages they derive from the maintenance of government; and if any special ground be necessary for the application of this tax to the maintenance of a fire department, we think it also exists. It is true that such companies fix their rates as nearly as may be with reference to the hazard of the risk, and that it is the object of such companies to fairly consider the efficiency of a fire department in fixing its rates for a particular city. Nevertheless, such estimates are at best conjectural, and while each property holder is interested in the prevention of conflagrations, a fire insurance company holding a large number of risks throughout the city is particularly so interested, and by reducing the hazard of fire below the average to be expected under circumstances otherwise similar, such an organization obtains an advantage peculiar to itself, and specially enjoys the protection of efficient municipal government in this particular. We have, therefore, no doubt of the authority of a city, under the charter provisions quoted, not only to impose a special occupation tax on insurance companies, but also to provide that such tax shall be applied exclusively to the maintenance of a fire department. Such a provision, instead of operating to the prejudice of the insurance company, is to its advantage, by devoting the proceeds of the tax to that particular municipal purpose in which such a company is chiefly, if not solely, interested.

We now reach the question of the validity of this particular ordinance. Is it an attempt, and a valid one, to execute the power granted to impose an occupation tax, or is it in effect an attempt to impose a license? In *Pleuler v. State*, 11 Neb., 547, Judge LAKE, in an elaborate and learned opinion, distinguished between license fees and taxes, and the court there held that in general a tax must be imposed solely for the purposes of revenue, while a license is imposed in the exercise of the police power, and has for its object the restriction or regulation of a certain occupation, the income derived from the license

fee being only incidental to the accomplishment of the main object. Measured by this test alone, we think the ordinance might be supported as one imposing an occupation tax. It is quite evident from its terms that its sole object is to obtain a revenue. It contains no restriction upon the granting of a license, vests no discretion to grant or refuse the same, and requires that the license shall be issued on payment of the fee. But by a long and unbroken line of decisions this court has held that the payment of such a tax may not be enforced by requiring its payment as a condition precedent to doing business, or by the imposition of a criminal punishment for doing business without payment. (*State v. Bennett,* 19 Neb., 191; *State v. Wilcox,* 17 Neb., 219; *State v. Green,* 27 Neb., 64; *Magneau v. City of Fremont,* 30 Neb., 843; *Templeton v. City of Tekamah,* 32 Neb., 542.) In *State v. Bennett, supra,* it was distinctly held that payment of an occupation tax by saloon-keepers cannot be made a condition precedent to the issuing of a license. It does not clearly appear whether the view of the court in that case was that the requirement of such a condition generally would transform the tax into a license or whether the court merely considered that a license having been obtained under the state law no further condition could be imposed. In either view the case is applicable to the one before us, because an insurance company is required before doing business in the state to comply with certain statutory requirements. It then obtains a certificate authorizing it to do business throughout the state, and in the narrower view of *State v. Bennett* it would be unlawful for a municipal corporation to impose a further condition. In *State v. Bennett, Magneau v. Fremont,* and *Templeton v. Tekamah* the ordinance imposing the tax was held valid, notwithstanding provisions whereby it was attempted to constitute the transaction of the business without paying the tax a misdemeanor. In *State v. Bennett,* however, the ordinance expressly provided that a civil action might be brought to recover the tax. In the other cases the ordi-

nance does not appear in full, but it is found on examining the records of those cases that, disregarding the method of enforcement by criminal prosecution, another method of collecting the tax was provided. This court has held that where a law imposing a tax provides a method of enforcement, that method is exclusive and must be strictly pursued. (*Richards v. County Commissioners of Clay County*, 40 Neb., 45; *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 41 Neb., 374; *Chapell v. Smith*, 40 Neb., 579.) The ordinance before us does not provide for the collection of a tax by civil action, as was the case in *State v. Bennett*, *supra*, and *Western Union Telegraph Co. v. City of Fremont*, *supra;* nor does it provide any method of enforcement except by a criminal prosecution for transacting business without paying the tax and obtaining a license. This portion is invalid. It is a general principle of constitutional law that where an invalid portion of a statute is so interwoven with the rest that the act may not stand and be operative with the invalid portion stricken out, or where it is apparent from an inspection of the act that the invalid portion formed an inducement to the passage of the act, then the whole act fails. (*Trumble v. Trumble*, 37 Neb., 340.) We know no reason why the same principle should not apply to a city ordinance, and applying it, it is found, by striking out the provisions of this ordinance which by repeated decisions of this court are clearly invalid, there is no method left of enforcing the tax, because the reason for permitting the enforcement by civil action, when no other method is provided, is founded upon an implication that the legislative body in failing to provide another remedy contemplated this. (*Richards v. Clay County*, *supra*.) But where that body did undertake to provide an exclusive remedy, and that a remedy beyond its power, it must be taken as an essential part of the act, without which the whole ordinance becomes inoperative. It follows that the ordinance was void and the judgment of the district court must be reversed.

REVERSED AND DISMISSED.