[No. 3295. Decided September 6, 1900.]

W. C. STULL, *Appellant,* v. J. P. DE MATTOS *et al., Respondents.*

**MUNICIPAL CORPORATIONS — TAXING POWER — LICENSING AUCTIONEERS.**

An ordinance of the city of New Whatcom charging auctioneers a license fee of $25 per day for selling stocks of merchandise, passed in pursuance of the general law authorizing cities of the third class "to license for purposes of regulation and revenue all and every kind of business," and "fix the rate of license tax upon the same," is valid as an exercise of the taxing power granted by such charter, even if it cannot be upheld as a legitimate exercise of the power to regulate business, on the ground that it is unreasonable and prohibitive in its nature.

**TAXATION—REASONABLENESS—PRESUMPTIONS.**

A tax will not be deemed oppressive and unreasonable, so as to constitute confiscation rather than taxation of property, merely from the amount of tax levied, since every presumption is in favor of its validity.

**SAME—UNIFORMITY—REGULATION OF BUSINESS.**

The constitutional provision requiring uniformity and equality in taxation applies to taxes upon property, but has no application to taxes upon trades, professions or occupations.

**SAME—UNIFORMITY AS TO CLASS—GRADUATED LICENSE FEES.**

An ordinance providing for the licensing of auctioneers and providing for different license fees for the sale of different kinds of goods is not objectionable on the ground of being ununiform as to class, since it is within the discretion of the city council to classify single kinds of business in accordance with the different character and kind of property sold and graduate the license tax thereon.

Appeal from Superior Court, Whatcom County. —Hon. HIRAM E. HADLEY, Judge. Affirmed.

*John R. Crites,* for appellant.

*Charles H. Hurlbut* and *E. P. Nicholson,* for respondents.

The opinion of the court was delivered by

FULLERTON, J.—The city of New Whatcom, by the terms of the general law under which it is incorporated (Bal. Code, § 938, subd. 10) has power:

"To license, for purposes of regulation and revenue, all and every kind of business, including the sale of intoxicating liquors, authorized by law, and transacted and carried on in such city, and all shows, exhibitions and lawful games carried on therein and within one mile of the corporate limits thereof, to fix the rate of license tax upon the same, and to provide for the collection of the same by suit or otherwise."

Acting under the authority thus granted, the city council passed an ordinance providing for licensing auctioneers. Section 6 of the ordinance provides:

"No sale of goods, chattels, or personal property at auction (excepting sales made under legal process, and imported live stock, sold for breeding purposes) within the city of New Whatcom, Washington, shall be made, excepting by an auctioneer or other persons who shall have first obtained from the city a license as hereinbefore provided."

Section 7:

"There shall be charged for every license granted for the selling of any household goods to be sold at the house where such goods have been in use, the sum of fifteen dollars per quarter or fifty dollars per year, payable in advance; and no license shall be granted for a shorter period than one quarter."

Section 8:

"There shall be charged for every license granted for the selling of any stocks of merchandise, or parts thereof, wearing apparel, dress goods, millinery goods, jewelry goods, and other stocks of goods, or parts of stocks of goods, the sum of twenty-five dollars per day, payable in advance; and no such license shall be granted for a shorter period

than one day. Every applicant for such license having, or professing to have, a regular auction store or fixed place of business, shall state in his written application the location of such store or place of business."

Section 10 provides penalties for violations of the ordinance and § 13 repeals all prior ordinances in conflict therewith. Prior to this time the city council had enacted an ordinance fixing the amount to be charged for auctioneer's licenses at $25 per quarter. In December, 1898, the appellant was engaged in the retail jewelry business in the city of New Whatcom, and, being desirous of opening an auction store for the purpose of selling jewelry at auction, engaged the services of one Frank Triplett to act as auctioneer for him, and applied to the proper officers of the city of New Whatcom for an auctioneer's license for one quarter in favor of Triplett, tendering to them the amount of the fee required by the old ordinance. The officers refused to issue the license, on the ground that the amount tendered was insufficient, by the terms of the ordinance in force, to authorize them to issue a license for the time demanded, and threatened to arrest and prosecute Triplett for violation of the ordinance in case he attempted to sell the appellant's goods at auction without paying a license fee at the rate of twenty-five dollars per day for each day during the time the auction should continue. This action was brought to restrain the threatened arrest and prosecution. Issue was taken on the allegations of fact in the complaint, and upon a trial judgment went in favor of the respondents.

It is the contention of the appellant that the later ordinance is void because the charge exacted as a license fee is (1) unreasonable, oppressive and prohibitory, and (2) not uniform as applied to class.

1. We agree with the appellant in his contention that this ordinance cannot be upheld as a legitimate exercise of the power to regulate businesses granted to the municipality by the general statutes. The power to regulate, while it vests in the municipal authorities a wide discretion, is not without well-defined limitations. Thus, as was said by the supreme court of Ohio in *Sipe v. Murphy,* 49 Ohio St. 536 (31 N. E. 884, 17 L. R. A. 184), construing an ordinance of the city of Columbus, passed under a power granted that city to regulate and license the sale at auction of goods, wares and merchandise imported into the city for the purpose of being sold at auction:

"It is not to be presumed from the language of the statute that it was the design of the legislature to authorize the passage of ordinances that would be unjust, or oppressive, or unfair and partial, or in restraint of trade, or in contravention of public policy, or containing special and unwarranted discriminations against property brought into the corporation from other parts of the same state to be sold at auction, or ordinances containing such discriminations against property brought into the corporation from another state for the same purpose, and thus in conflict with the powers of congress to regulate commerce among the several states. And while ordinances subject to such infirmities cannot be deemed to be authorized by the statute, obviously it cannot be held that the municipal body has such authority by virtue of the general incidental power of municipal corporations to enact appropriate by-laws or ordinances."

So, in *Simrall & Co. v. Covington,* 90 Ky. 444 (14 S. W. 369, 9 L. R. A. 556, 29 Am. St. Rep. 398) it was said:

"Perhaps the most distinguishing feature of the common law is its regard for the protection and equality of individual right. It is a rule, therefore, that where the by-law of a municipality, enacted under a general grant of power or by virtue of its incidental authority, is unfair and partial in its operation, it will be declared void. It

will not be upheld if it be unreasonable and oppressive. It must not contravene common right or the general law of the state, or make unwarranted or special discriminations."

Under the statute of Iowa authorizing cities of 'the first class to regulate and license sales within their corporate limits by auctioneers and transient merchants, the city of Ottumwa passed an ordinance fixing the amount of the license fee for transient merchants, whether selling at auction or at private sale, at the rate of $250 per month, or $25 per day, if a license was issued for a shorter period than one month. This ordinance was said by the supreme court of that state to be an abuse of the power conferred, and the ordinance was held invalid; the court saying:

"The municipality, under the authority given it to license, had the right to impose such a charge as would cover, not only the necessary expenses of issuing it, but also the additional labor of officers, and other expenses imposed by the business, but nothing beyond this.   *   * * It seems to us, in view of the nature of the business licensed, the fact that it was in no manner injurious to the public health or morals, that it was confined to a particular place, and was not of such a nature as to become a nuisance; that it did not require the police supervision, and was in no manner calculated to disturb the peace and quietness of the city—that it is perfectly apparent that the fee exacted in this case was not required as a police regulation, but for the purpose of revenue to the city. It may also have been fixed at this sum to protect, in a measure, the home merchant against the passing one, who otherwise might not be called upon to pay anything to the support of the instrumentalities of government. But such protection, however desirable and just, cannot be afforded under an ordinance passed in virtue of authority given by the state to regulate and license. In passing, we may observe that a comparison of the language used in sections 462 and 463 of the Code clearly demonstrates that the legislature did not intend, by sec-

tion 462, to confer upon municipalities the right to tax transient merchants, by the use of the words 'regulate and license.' "  *Ottumwa v. Zekind,* 95 Iowa, 622 (64 N. W. 646, 58 Am. St. Rep. 447, 29 L. R. A. 734).

It may be true, as the respondents argue, that, under an authority to license for the purpose of regulation, the amount proper to be charged as a license fee must be left largely to the discretion of the municipal authorities, and that the fee exacted need not be confined to the mere expense incident to the issuance of the license, but may be made sufficiently large to cover all costs that will be incurred in the oversight of the regulated business by the police officers, and create a fund sufficient to prosecute violators of the regulations imposed, even though incidentally the revenues of the municipality may be increased thereby; and also that it is only when the ordinance is plainly unreasonable and prohibitive in its character that the courts may interfere and pronounce it invalid.  But, conceding this, as well as all else that can justly be claimed for the power to regulate the business of selling goods at auction, we think the present ordinance cannot be sustained as a legitimate exercise of that power. *Chaddock v. Day,* 75 Mich. 527 (42 N. W. 977, 4 L. R. A. 809, 13 Am. St. Rep. 468) ; *Morgan v. Orange,* 50 N. J. Law, 389 (13 Atl. 240) ; *State v. Taft,* 118 N. C. 1190 (23 S. E. 970, 32 L. R. A. 122, 54 Am. St. Rep. 768) ; *Steffy v. Town of Monroe City,* 135 Ind. 466 (35 N. E. 121, 41 Am. St. Rep. 436) ; *Champer v. Greencastle,* 138 Ind. 339 (35 N. E. 14, 24 L. R. A. 768, 46 Am. St. Rep. 390).

Can the ordinance be upheld as an exercise of the taxing power ?  As has been shown, the statute expressly empowers municipalities of the class to which the city of New Whatcom belongs to license for the purpose of revenue as well as of regulation all and every kind of business,

without limitation as to the amount of tax that may be thus imposed. For this reason it cannot be said that the ordinance in question is in excess of the power conferred upon the municipality by its charter. Nor is a tax of this kind within any of the inhibitions of the constitution against unequal and ununiform taxation. This we determined in the case of *Fleetwood v. Read,* 21 Wash. 547 (58 Pac. 665, 47 L. R. A. 205). That case arose upon a conviction for the violation of an ordinance of the city of Tacoma which required dealers in merchandise, who gave to purchasers of goods coupons, or similar devices, which enabled such purchaser to obtain from other dealers articles of merchandise on the surrender of the devices received, to pay a license fee of $50 per year. It was insisted that the ordinance was void because it imposed a burden upon a portion, and not the whole, of a class of merchants, and that it was in violation of §§ 1, 2 and 9 of article 7 of the state constitution, which provide for uniformity in taxation. In passing upon these objections, we held that the ordinance was uniform as to class, in that it made no distinction between merchants doing business in that particular way, and that the constitutional provision requiring uniformity and equality in taxation applied to taxes upon property, but had no application to taxes upon trades, professions or occupations. The adjudicated cases on these questions were not collated by the writer of that opinion. They can be found, partially collated, at least, in the cases of *Newton v. Atchison,* 31 Kan. 151 (1 Pac. 288, 47 Am. Rep. 486); *Denver City Ry. Co. v. Denver,* 21 Colo. 350 (41 Pac. 826, 29 L. R. A. 608, 52 Am. St. Rep. 239); note to *People v. Thurber,* 13 Ill. 554 (Smith & Hitchcock's reprint), where will be found, also, elaborate and thorough discussions of the principles involved. See further,

*New Orleans v. Kaufman,* 29 La. An. 283 (29 Am. Rep. 328); *Walla Walla v. Ferdon,* 21 Wash. 308 (57 Pac. 796).

The learned counsel for the appellant made the further contention that, even if there be no express constitutional inhibition against this mode of taxation, or the amount that may be levied thereunder, there is what may be called implied inhibitions of the constitution, which can be invoked to prevent flagrant injustice and palpable wrong, though committed under the guise of a power so wide in extent as the taxing power—such as those which guaranty the individual citizen against willful aggressions on his personal rights, and unlawful confiscations of his property. There seems to be in authority, as well as in reason, support for this contention. Judge COOLEY, in his work on Constitutional Limitations, discussing the question of the power of taxation, says:

"Having thus indicated the extent of the taxing power, it is necessary to add that certain elements are essential in all taxation, and that it will not follow as of course, because the power is so vast, that everything which may be done under pretense of its exercise will leave the citizen without redress, even though there be no conflict with express constitutional inhibitions. Everything that may be done under the name of taxation is not necessarily a tax; and it may happen that an oppressive burden imposed by the government, when it comes to be carefully scrutinized, will prove, instead of a tax, to be an unlawful confiscation of property, unwarranted by any principle of constitutional government." Cooley, Constitutional Limitations (5th ed.), p. 603.

In his work on Taxation, while speaking more directly to the question, he says:

"If a revenue authority is what seems to be conferred, the extent of the tax, when not limited by the grant itself, must be understood to be left to the judgment and discre-

tion of the municipal government to be determined in the usual mode in which its legislative authority is exercised; but the grant of authority to impose fees for purposes of revenue would not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose." Cooley, Taxation (2d ed.), p. 599.

See, also, cases cited in support of the text; *Fretwell v. Troy,* 18 Kan. 271, 275. If, however, it be conceded that the courts have power to declare a municipal ordinance levying a license tax on businesses invalid on the ground that the tax imposed is so oppressive and unreasonable as to amount to confiscation, rather than taxation, they will not determine the question by a mere inspection of the amount of the tax imposed. All presumptions and intendments are in favor of the validity of the tax. It will be presumed, in the absence of a contrary showing, that the municipal authorities acted justly and honestly, and not in disregard of the rights of the citizens or property holders of the municipality; that a necessity for the revenue to be derived from the tax exists; that an equally high rate has been levied upon all business and on all property; and, however large the particular tax complained of may appear to be, it will be presumed to be in harmony with all other taxation, and not an unjust or unreasonable discrimination. In other words, the mere amount of the tax does not prove its invalidity. To determine the amount of revenue required by the needs of the municipality, when not limited by constitutional barriers, is within the sole discretion of the legislative authorities, and the courts have no warrant to interfere with that discretion. To quote Chief Justice MARSHALL, it is "unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power."

Passing, then, to the record, the only evidence we find that might be said to support the contention of the appellant that the tax imposed by this ordinance is unreasonable and oppressive, is the showing to the effect that the ordinance was passed upon the petition of certain merchants of New Whatcom; that no license had been taken out to sell merchandise in this manner since the ordinance went into effect; that the auction conducted by the appellant, held while the temporary restraining order issued in this case was in force, would have been unprofitable had he been compelled to pay the license fee required by the ordinance; and the statement of one of the witnesses that the ordinance was intended by the city council to be prohibitory.    But we think this inconclusive.    Every citizen of a municipality has an undoubted right to petition for such legislation as he may think will be beneficial to the community.    The fact that no license has been taken out under the ordinance might be evidence that it was less profitable to sell goods in this manner than in the ordinary way, even had auction stores been common prior to the passage of the ordinance, but it would not prove that it was wholly unprofitable.    Nor does the failure of the appellant have this conclusive effect.    So many conditions enter into every business enterprise, tending to make it successful or unsuccessful, that it cannot be said that its non-success is caused by any one condition.    It may be the fault of the individual having the business in charge.    Common experience needs only to be cited to prove that under exactly similar conditions many succeed where one fails.    Neither is the intention of the city council in passing the ordinance material.    If the ordinance be passed in accordance with the charter authorizing it, be lawful upon its face and its nature and effect, the courts will not generally inquire what motives

induced its passage. *Borough of Freeport v. Marks,* 59 Pa. St. 253; *Buell v. Ball,* 20 Iowa, 282; Dillon, Municipal Corporations (4th ed.), §§ 311, 312.

2. It is insisted that the ordinance is not uniform as applied to class. As has been shown, the main contention of appellant under this head—namely, that the ordinance is invalid because it imposes a burden upon a portion, and not the whole, of a class of merchants—is concluded against him by the case of *Fleetwood v. Read, supra.* The further objection is, that the discrimination made by the ordinance in the amount of the license fee required of auctioneers for the sale of the goods described in § 7 and the amount of the fee required for the sale of those described in § 8, is an unlawful discrimination. This could be so only on the theory that the business of selling property at auction is but a single "kind of business" within the meaning of these words as used in the city's charter. But, conceding this to be correct in principle, we know of no reason why the city council may not classify single kinds of business in accordance with the different character and kind of property sold, and graduate the license tax in any manner that the exercise of a sound discretion dictates.

The judgment is affirmed.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.