[No. 4933.  Decided March 27, 1905.]

## In re Application of Louis Garfinkle for a Writ of Habeas Corpus.

## Louis Garfinkle, Respondent, v. John Sullivan, as Chief of Police of Seattle, Appellant.[1]

APPEAL—APPEALABLE ORDERS—DISCHARGE IN HABEAS CORPUS. Habeas corpus being a civil proceeding, an appeal lies from an order discharging the prisoner.

MUNICIPAL CORPORATIONS — PEDDLERS— LICENSE—ORDINANCES— CONSTRUCTION—EXEMPTION OF MERCHANTS. A provision in a section of an ordinance regulating peddlers from wagons, etc., that "this section" shall not apply to storekeepers or merchants, must be construed to relate exclusively to said section and not to a subsequent section relating to the maintenance of booths, stands, etc., within a restricted district.

SAME. A clause in an ordinance excepting merchants from taking out a peddler's license, with the proviso that they shall not act as peddlers without first obtaining a license, is wholly ineffective as an exemption, leaving merchants in the same position as they would have been in without such clause.

APPEAL AND ERROR—REVIEW—FINDINGS—CONCLUSIONS. In actions triable de novo on appeal, the findings of the trial court are not conclusive like the verdict of a jury, and while more or less advisory and controlling when based on evidence nearly equal, the supreme court will look at the testimony to see if the findings are justified.

MUNICIPAL CORPORATIONS—PEDDLERS—LICENSE OF—TAXATION— EXCESSIVE LICENSE AS POLICE REGULATION—TAX FOR REVENUE— FINDINGS NOT SUPPORTING CONCLUSIONS. A finding that the amount of a peddler's license is not required by the city for purposes of police regulation does not sustain the conclusion that it is excessive and the ordinance void, since the city has a right, in addition, to impose a tax on peddlers for the purposes of revenue.

SAME—EVIDENCE OF PROHIBITIVE LICENSE FEE—SUFFICIENCY— ELEMENT OF COMPETITION. Evidence that a license tax of $100 for peddlers with two-horse wagons in the city of Seattle, where

1Reported in 80 Pac. 188.

there were eighty people engaged in the business, was burdensome and prohibitive of the transaction of the business does not sustain a finding that the same is excessive, since the question must be determined irrespective of the element of competition, individual ability, and other facts, not related to the business under the most favorable conditions.

SAME—UNIFORMITY OF TAXATION. The rule requiring uniformity in taxation does not apply to a license upon trades or occupations, since the same is not a tax on property.

Appeal from a judgment of the superior court for King county, Bell, J., entered July 14, 1903, discharging a prisoner upon a writ of habeas corpus, after a hearing on the merits. Reversed.

*Ellis De Bruler*, for appellant.

*Tucker & Hyland*, for respondent.

DUNBAR, J.—The petitioner and respondent was convicted before a justice of the peace, in Seattle, for peddling with a two-horse wagon without a license, which was required by virtue of ordinance 6,036, as amended by ordinance 8,327, was fined in the sum of $5, and committed to the city jail until such fine should be paid. He sued out a writ of habeas corpus before Judge Bell, in the superior court of King county, and was discharged from custody thereon. The city appeals from such judgment of discharge.

Respondent moves to dismiss this appeal for the reason that the order appealed from is not an appealable order, but, under the decisions of this court to the effect that a habeas corpus proceeding is a civil proceeding, the motion will be denied.

Respondent was prosecuted for violating an amendment to the ordinance referred to above, the pertinent parts of which are as follows:

"For peddling meat, game, poultry, fruit, vegetables, butter, eggs, or other edibles, farm or dairy produce not included in the exceptions of this section, with a wagon drawn by two horses, one hundred dollars, per annum; with a wagon drawn by one horse, seventy-five dollars per annum; when the article, thing or product mentioned in this paragraph is sold or delivered by a person or persons carrying or transporting the same by any other means or in any other manner, fifty dollars for each such annual license period, and no license to be issued for a less period than one year."

The respondent also complained of § 15 of said ordinance 6,036, the same reading as follows:

"It shall be unlawful for any person to set up or maintain any booth, stand, table, box, board, shelf, or other object for the sale of fruits, sweetmeats, beverages or other commodity therefrom, or to expose for sale any fruit, sweetmeats, beverages or other commodity, or for any other purpose, on any street, alley or public ground in the city limits, to wit: all that part of the city of Seattle lying south of Denny way and west of Eighth avenue and Eighth avenue south, and including said way and avenues;"

and further providing that it should be unlawful for any person to hawk or sell at retail, or peddle from any basket, box, tray, wagon, etc., fruits or other commodities with the exception of milk, ice, bread or newspapers, within the same territory; for the reason that subd. 8 of § 14 makes an unlawful discrimination as against peddlers and in favor of local dealers, which subdivision reads as follows:

"That this section shall not be applicable to storekeepers or merchants who have permanent business locations engaged in the sale of the things, articles or products aforesaid; provided, however, that no merchant or storekeeper shall act as a peddler, huckster, or hawker without first obtaining a license as aforesaid."

The court found that that part of ordinance 6,036 was

void, for the reason that it discriminated in favor of the
merchants in allowing them to hawk or peddle commodities
in the district which was restricted, and in which other ped-
dlers were prohibited from operating in like manner.    But
an examination of this ordinance convinces us that the
court was entirely in error in its construction, and that
subdivision 8 complained of, viz., the provision that the
section should not be applicable to storekeepers or mer-
chants, was intended to apply exclusively to the provisions
of § 14, instead of to § 15 with reference to the restricted
district, and that there was no intention, in enacting the
ordinance, to allow any one to peddle or hawk within the
restricted district, and therefore no discrimination in favor
of the local merchants.    The provision, it is true, seems to
be rather senseless under any construction which can be
placed upon it, for it provides that § 14 shall not be ap-
plicable to storekeepers or merchants, and then makes the
further provision that no merchant or storekeeper shall act
as a peddler or huckster or hawker without first obtaining
a license as aforesaid, thereby placing the merchant in
exactly the same position as it does others, a position that
he would have been in without the enactment of subd. 8 at
all.    But it cannot, under any circumstances, be construed
to have reference to § 15, because the language of the sub-
division is that "this section [which is § 14] shall not be
applicable," etc.

So that the question recurs squarely upon the proposi-
tion of whether the license imposed under § 15 was so great
as to be prohibitive, and, if so, whether or not the further
power of the city to tax the business was exceeded.    For
it was held by this court, in *Fleetwood v. Read,* 21 Wash.
547, 58 Pac. 665, 47 L. R. A. 205, that cities of the first
class, under their charters, have power to grant licenses
for the purpose of revenue, as well as for the purpose of

police regulation, and this doctrine was reaffirmed in *Stull v. De Mattos,* 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892.

It is insisted by the respondent that the question in this case is not whether or not the license could be pronounced too high or oppressive, but that it is a question of sustaining the findings of the lower court. While there have been some expressions in some of the cases which might be construed as holding that this court would be bound by the findings of the lower court, and while it was so inadvertently decided in *Second Nat. Bank v. Hatch,* 24 Wash. 421, 64 Pac. 727, with that exception, the uniform holding of this court has been to the contrary, as it must be under the provisions of the statute, and that case is now expressly overruled, and the announcement made that the same rule does not obtain in passing upon the findings of the court as does upon the verdict of a jury. In the latter case the court is bound by the verdict of a jury on questions of fact, while in the former, though the findings of the court are more or less advisory to this court, and the evidence upon which they are based (being found nearly equal) might be controlling, yet such findings are not conclusive on the appellate court, which will look at the testimony to see if the findings are justified.

In this particular case, the court, in its findings, seemed to overlook the cases of *Stull v. De Mattos* and *Fleetwood v. Read, supra,* and the finding was that the amount of the license for peddling provided by said ordinance—for a two-horse wagon $100, and for a one-horse wagon $75— was so excessive as to amount to a tax, and that said amounts were not required by the city of Seattle for the purpose of regulating such peddlers. We think the testimony in the case fully justifies the finding of the court that the amount of the license was not required by the city of Seattle for the purpose of regulating the peddlers; but,

inasmuch as in addition to that the city had the right to impose a tax, the finding is not sufficient to warrant the judgment which followed.

Testimony was also introduced to the effect that the license or tax was prohibitive of the business sought to be controlled. Of course, it is an unquestioned principle of law that a municipality cannot, under the guise of license or regulation, place the license so high that it is prohibitive of the transaction of the business sought to be engaged in; but, while it was conclusively shown by the testimony in this case that the license was burdensome, under the conditions existing, and that peddlers could not afford to engage in the business of peddling and pay the tax required, it was also shown that there were some eighty persons engaged in this business; and, as was said in *Stull v. De Mattos, supra*:

"So many conditions enter into every business enterprise, tending to make it successful or unsuccessful, that it cannot be said that its non-success is caused by any one condition. It may be the fault of the individual having the business in charge. Common experience needs only to be cited to prove that under exactly similar conditions many succeed where one fails."

In this particular case, not only the business qualifications of the parties who swore to the fact that they could not make a living, if they paid this license, are to be taken into consideration, but the other fact as to the amount of competition in the business. It might be that, if there were *no* license imposed, the competition would be so great that one could not engage in the business with profit. A license cannot be said to be prohibitive in amount where it is shown that one hundred men could not pay the license and do the business profitably. The same might be said of fifty or twenty-five, or any number of men greater than one. But the doctrine must be restricted to an individual,

or to the business under the most favorable circumstances, divested of the element of competition, inability, inexperience, and other qualities which might lead to the failure of any business, with or without the payment of a license.    The most common cases in which this question of prohibitive license arises are cases where licenses are imposed for the sale of spirituous liquors, and, while it has been held in many cases that the license imposed was prohibitive, it has always been so held only where the prohibition related to the business itself under the most favorable conditions.    In such case, the question of competition is never discussed, nor would an applicant be heard to say that he could not afford to pay $1,000 for a license for conducting a saloon because there were other men engaged in the same business in the same city.    Nor can the petitioner avoid the tax on the ground of want of uniformity in taxation, for we held in *Fleetwood v. Read, supra,* that a tax on trades, professions, and occupations was not a tax on property which fell within the inhibition imposed by the constitutional provisions in relation to uniformity of taxation.

Believing that the court erred in discharging the prisoner, the judgment is reversed.

MOUNT, C. J., HADLEY, and FULLERTON, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.