## SALT LAKE CITY v. CHRISTENSEN CO.

No. 1896.  Decided April 14, 1908 (95 Pac. 523).

1. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTIONAL PROVISIONS—STATE CONSTITUTIONS—GRANT OR LIMITATION OF POWERS. State Constitutions are mere limitations, not grants, of powers.

2. TAXATION—NATURE AND EXTENT OF POWER—POWER OF LEGISLATURE IN GENERAL. The power of taxation is a legislative function, and, unless restrained by the Constitution, the exercise of this power is vested in the Legislature, whose power over the subject is plenary and supreme.

3. LICENSES—OCCUPATION TAX—CONSTITUTIONAL PROVISIONS—LEGISLATIVE POWER. Constitution, art. 13, sec. 3, requires the Legislature to provide by law a uniform and equal rate of assessment and taxation of all property. Section 12 provides that nothing in the Constitution shall be construed to prevent the Legislature from providing a tax on occupation, license, franchise, or mortgages. *Held,* that section 12 places no limitation on the power of the Legislature to impose the several kinds of taxes specified therein.

4. SAME—EQUALITY AND UNIFORMITY. The constitutional provision imposing equality and uniformity of taxation has no application to an occupation or license tax, but is limited to a direct property tax, which is assessed and collected in the usual way.

5. SAME—NATURE OF OCCUPATION TAX. A tax imposed on the carrying on of any business, trade, profession, or calling is not a direct tax on property.

6. SAME—AMOUNT OF TAX—REASONABLENESS CLASSIFICATION. Revised Statutes 1898, sec. 206, subd. 87, confers power on cities to raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city, and regulate the same by ordinance, and provides that all such license fees and taxes shall be uniform in respect to the class upon which they are imposed. *Held,* that an ordinance imposing a tax on any busi-

ness, trade, profession, or calling, and which divides the merchants and bankers into twenty-two classes, those carrying stock exceeding $500,000 to constitute the first class and pay an annual license tax of $500, the lowest class being limited to $200, which pays an annual license tax of $10, and the amount of $100,000, constituting the difference between each of the first five classes, was not in violation of the statute, the classification, while in one sense arbitrary, not being unreasonable.

7. TAXATION—POWER TO TAX—RESTRICTIONS—POWERS OF COURTS. Where neither the Constitution nor the statute imposes absolute restrictions on the power of taxation, the courts may not arbitrarily impose any, unless it clearly appears that the tax imposed is oppressive or clearly and unreasonably discriminatory, and thus is an abuse of the taxing power.

8. MUNICIPAL CORPORATIONS—ORDINANCES—OCCUPATION TAX—VALIDITY. That the penal provision of an ordinance providing for an occupation tax may be void, as imposing a penalty for failure to pay the tax which is not imposed for a failure to pay taxes generally, does not invalidate the remainder of the ordinance.

APPEAL from District Court, Third District; Geo. C. Armstrong, Judge.

The Christensen Company, a corporation, was convicted of violating a city ordinance imposing an occupation tax, and appeals.

AFFIRMED.

*Zane & Stringfellow* for appellant.

*Ogden Hiles* and *H. J. Dininny* for respondent.

FRICK, J.

On the 27th day of November, 1906, the city, in due form, filed a complaint in the city court wherein it was alleged that the defendant was carrying on a certain business within said city without having complied with certain sections of an ordinance requiring the payment of a certain license tax as therein specified. The defendant, appellant here, demurred to the complaint. The case, by consent of the parties, was transferred from the city court to the district court

of Salt Lake county. In connection with the demurrer afore-said the parties submitted the case to the district court upon substantially the following agreed statement of facts:

That the appellant is a corporation, and is engaged in and carrying on the business of a shoe merchant in said city; that it has refused to comply with sections 356 and 380 of the Revised Ordinances of said city; that appellant has paid all taxes except the license tax referred to in said ordinance, which latter tax appellant claims to be invalid; that appellant for the year 1906 had been duly assessed upon all of its stock under the laws of the state for state, county, and city purposes (other than said license tax), and that the taxes so assessed have been fully paid; that the license tax now in question is attempted to be collected upon the same stock of goods upon which the other taxes referred to above were paid. Section 356 of the City Ordinances provides:

"It shall be unlawful for any person to engage in or carry on any business, trade, profession, or calling, for the transaction or carrying on of which a license is required, without first taking out or procuring the license required for such business, trade, profession, or calling."

Section 380, so far as material here, provides:

"It shall be unlawful for any wholesale or retail merchant to commence or carry on his business without first making a statement under oath of the cash value of all goods, wares, and other merchandise which he may have in his possession or under his control for sale."

The ordinance is also made applicable to bankers and brokers, who must make a similar statement showing the amount of capital employed in the business conducted by them. These statements are required to be filed with the city recorder. The ordinance divides the merchants and bankers into twenty-two classes. All those that exceed the sum of $500,000 constitute the first class, and must pay an annual license tax of $500. The lowest class is limited to $200, which pays an annual license tax of $10. The several classes are somewhat arbitrarily arranged. To illustrate: The amount of $100,-000 constitutes the difference between each of the first five classes; that is, the first class takes in all above $500,000,

while the fifth class reaches all above $100,000 and not exceeding $200,000, and so on. The fifth class pays a license tax of $300 annually, the fourth $350, and the third $400, and the second $450. The sixth class reaches all stocks valued at $75,000 and not exceeding $100,000, and pays $250 as an annual tax. The seventh class reaches stocks valued at $60,000 and not in excess of $75,000, and pays an annual license tax of $225. The classification is continued by this method until it reaches the lowest class as stated above. The appellant comes within the nineteenth class, the stocks of which are valued at $1,000 and not to exceed $2,000, and is required to pay an annual license tax of $30. The foregoing, we think, sufficiently illustrates the classification upon which the city bases its rights to impose the license tax involved in this proceeding. Upon the foregoing facts and the two sections of the ordinance above quoted from, the district court overruled the demurrer and adjudged the appellant guilty of a violation of the ordinance aforesaid, and imposed a fine of $10 and costs, from which this appeal is prosecuted.

The first alleged error to be noticed relates to the objection that the ordinance is invalid. It is strongly urged by counsel for appellant that the ordinance in question offends against section 3 of article 13 of the Constitution of this state, which, so far as material here, provides:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation of all property in the state, according to its value in money, and shall prescribe by general laws such regulations as shall secure a just valuation for taxation of all property; so that every person and corporation shall pay a tax in proportion to the value of his, or its property."

No doubt the provisions of this section are mandatory, and require that all property taxes shall be equal and uniform in so far as this may be accomplished by the application of general laws. Does this section apply to the license tax in question? If it does, then, perhaps it may be said that the tax imposed by the ordinance is not as equal and uniform, when limited to a strict money valuation, as it could be made,

and hence the tax is not proportioned as required by the section just quoted. We think, however, that the section in question was not intended to have, and, in fact, does not have, any application to the license tax in question. It is quite true, as counsel for appellant suggest, that the tax in question, although called a license tax is, nevertheless, not within that class of licenses which are imposed under the police power of the state for the purposes of regulation, but that it is in fact a tax imposed for revenue purposes merely. This may be conceded, and still we think the tax in question is not within the constitutional provision above referred to. Section 12 of the same article provides: "Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax on income, occupation, license, franchise or mortgages." It is contended that this section must be construed *in pari materia* with that part of section 3 quoted above, and that the different kinds of taxes enumerated in the latter section must be equal and uniform, precisely the same as those must be which are mentioned in section 3. It seems to us, however, that section 12 has nothing whatever to do with section 3. It is too well settled to require more than passing mention that state Constitutions are mere limitations and not grants of powers. It is equally well settled that the power of taxation is a legislative function and unless restrained by the Constitution the exercise of this power is vested in the legislature and its power over the subject is plenary and supreme. By adopting section 12, as we view it, the framers of the Constitution neither intended to, nor did they, in any way place a limitation upon the power of the Legislature to impose the several kinds of taxes specified in that section. Out of abundant caution, however, the framers of the Constitution said that nothing therein should be so construed as to prevent the Legislature from imposing and enforcing the said taxes.

Having thus eliminated from the Constitution altogether the several kinds of taxes specified in section 12, is it reasonable to suppose that the framers of that instrument nevertheless intended to provide for the conditions upon which

such taxes should be imposed by a reference to other parts of the same instrument? The framers of the Constitution imposed certain duties, and with them certain specified restrictions, upon the Legislature, but in section 12 neither duties nor restrictions of any kind are mentioned. All that was intended, and all that was there said, was 'that nothing that had been said on the subject of taxation should be construed so as to in any way curtail the power of the Legislature with regard to license or occupation taxes. In other words, the framers of the Constitution desired to impress upon all that no restriction upon the Legislature should be implied from what had been before written in that instrument upon the special subject of taxation referred to in section 12. We are of the opinion, therefore, that the right to impose occupation and license taxes and the other subjects of taxation mentioned in section 12 was left, and clearly intended to be left, where it always was, namely, with the Legislature, to be applied and controlled as to it might seem just and proper.

Independently of the constitutional exception above discussed, the courts have frequently passed upon and applied the general constitutional provision demanding equality and uniformity of taxation. The decisions are almost, if not quite, unanimous that the constitutional provision which imposes equality and uniformity of taxation has no application to an occupation or license tax, but is limited to a direct property tax which is assessed and collected in the usual way; and further, the contention that the tax in question is a direct tax upon property is also very ably and satisfactorily discussed and decided against counsel's contentions by the following, among numerous other, cases: *City of Newton v. Atchison,* 31 Kan. 151, 1 Pac. 288, 47 Am. Rep. 486; *Banta v. City of Chicago,* 172 Ill. 204, 50 N. E. 233, 40 L. R. A. 611; *American Union Express Co. v. City of St. Joseph,* 66 Mo. 675, 27 Am. Rep. 382; *In re Watson,* 17 S. D. 486, 97 N. W. 463; *Baker v. City of Cincinnati,* 11 Ohio St. 534; *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *Stull v. De Mattos,* 23 Wash. 71, 62 Pac. 451, 51 L.

R. A. 892; *City of Aurora v. McGannon,* 138 Mo. 38, 33
S. W. 469; *Clark v. City of Titusville,* 184 U. S. 329, 22
Sup. Ct. 382, 46 L. Ed. 569; *Commonwealth v. Clark,* 195
Pa. 634, 46 Atl. 286, 86 Am. St. Rep. 694, 57 L. R. A. 348;
*City of Little Rock v. Prather,* 46 Ark. 471; *City of Los
Angeles v. Los Angeles, Ind., Gas Co.* (Cal.) 93 Pac. 1006;
*Mageneau v. City of Fremont,* 30 Neb. 843, 47 N. W. 280,
9 L. R. A 786, 27 Am. St. Rep. 436; *Rosenbloom v. State,* 64
Neb. 342, 89 N. W. 1053, 57 L. R. A. 922.

Counsel for appellant, however, contend that the cases
decided by the Supreme Court of the United States are not
controlling, because that court simply passed upon the ques-
tion whether such taxes were in conflict with the federal Con-
stitution. This contention is no doubt correct, but inasmuch
as the tax in question does not come within the section of
our constitution which requires it to be based upon a strict
money valuation, what is said by the Supreme Court of the
United States with regard to the propriety of classification
and uniformity is of great, if not controlling force.

But it is further contended that if the tax in question is
not violative of the Constitution of this state, it still must
fail because it is in violation of subdivision 87, section 206,
Rev. St. 1898, by virtue of which the tax is imposed. Under
section 206 the Legislature has conferred certain powers
upon the cities of this state, and, among others, the follow-
ing:

"To raise revenues by levying and collecting a license fee or tax
on any private corporation or business within the limits of the city, and
regulate the same by ordinance. All such license fees and taxes shall
be uniform in respect to the class upon which they are imposed."

The foregoing is a verbatim copy of what constituted sub-
division 89 of section 1755, Comp. Laws 1888, which was in
force at the time the Constitution was adopted, and was re-
enacted and incorporated into the Revised Statutes of 1898.
This is cumulative evidence that the framers of the Constitu-
tion in adopting section 12 of article 13, above referred to,
intended to leave the power and manner of imposing license
taxes just as they were. The provision is also, with the ex-

ception of three words, namely, "private corporations" and "fees," a transcript of the statute of Nebraska, under which the tax under consideration in the case of *Mageneau v. Fremont,* supra, was imposed. The same objection to the tax was made in the Nebraska case as is here made, namely, that the tax is not uniform, and therefore is not in compliance with the foregoing provision. This objection was, however, overruled in the Nebraska case, and this was done notwithstanding the fact that the tax in Nebraska was imposed upon all merchants alike, whether large or small, under what is termed a "flat rate." This will also be found to have been the case in a number of other cases, while in others a classification was upheld similar to the one under which the tax in question was imposed. The authorities, therefore, are against the contention of appellant that such a classification offends against uniformity. The provision is not that the taxes must be equal as between individuals, but that they "shall be uniform in respect to the class upon which they are imposed." If a flat rate upon all merchants alike is a uniform tax within the provision, why is one where greater equalization is effected by classifying the merchants into groups, so as to bring those with stocks the value of which are more nearly alike, not also uniform? The classification is for the sole purpose of establishing equality, so far as this can be done.

These questions of uniformity and equality are fully discussed and decided against appellant, and classifications similar to the one applied in this case are sustained in the cases cited from Kansas, Pennsylvania, the Supreme Court of the United States, Missouri, Arkansas, California, and others. While Mr. Justice Brewer, in the Kansas case, *supra,* suggests that *prima facie* a tax assessed upon the actual value of property is perhaps better calculated to approximate true equality and uniformity than this can be done by any other method, he, nevertheless, concedes that it is but a theory, and that such a method may not in all cases produce equality or uniformity. Where the burden imposed by a tax is alone considered, the foregoing method, as a general rule, may re-

spond to both uniformity and equality, but where the benefits derived from a city imposing the tax are considered in connection with the burdens thereby imposed, a tax based strictly upon a property valuation worked out by percentages may fall far short of being either equal or uniform. For example: In a city like Salt Lake, where the city provides police and fire protection and lights the streets for all alike, and defrays the expenses incident thereto out of the general funds, it is not unlikely that a merchant with a stock worth $5,000 may derive fully as much benefit from this source as one with a stock worth $50,000, and it may cost the city quite as much to protect the lesser as it does the greater. The maintaining of the streets in repair and sprinkling and flushing them applies in the same way. No method of taxation that is absolutely equal and uniform has yet been discovered. If, therefore, a flat rate upon all merchants alike should be imposed, the disparity of the tax as applied to individual cases may be much greater still than it would be by a reasonable classification of the merchants as has been done by the city in this case. It may cost the city more in proportion to provide the appellant with the necessary fire and police protection, say nothing concerning the other matters referred to, than it does to provide the same things to one of the classes above him which pays a larger tax. The classification adopted by the city, while in one sense arbitrary, cannot be said to be unreasonable as a matter of law. Its purpose is not to oppress, but rather to equalize the burden of taxation. If a tax were levied strictly according to value, and the amount thereof ascertained by percentages upon such value, may it not, for the same reasons we have stated, perhaps be less equal and uniform than it is by the present method? This is, we think, well illustrated by the late case cited from California. It is also illustrated by the cases which uphold the flat rate upon all merchants and business men alike. Numerous other illustrations might be made, and some others are given in the cases cited, why the method to be pursued in imposing taxes of the character now under consideration must, to a very large extent, be left to the dis-

cretion of those whose duty it is to impose and collect them. Where neither the Constitution nor the statute imposes absolute restrictions, the courts may not arbitrarily impose any unless it clearly appears that the tax imposed is oppressive, or clearly and unreasonably discriminatory, and thus is an abuse of the taxing power. Under the very numerous decisions of the courts of this country, emanating, as they do, from the highest federal and state courts, the questions with regard to the uniformity and equality, as well as the method of classification pursued by the city in this case, are no longer open questions. All of them have been settled adversely to the contention of appellant. *Matthews v. Jensen,* 21 Utah, 207, 61 Pac. 303, does not announce a doctrine contrary to the cases above referred to. In that case the power of imposing the license was involved. What is there said about classification and uniformity was applied to the imposition of the license fee under the police, and not under the taxing, power of the state. That decision, therefore, has no controlling influence upon the question involved in the case at bar.

Finally, it is urged that the ordinance is invalid because it imposes a penalty by fine or imprisonment for failure to pay a mere property tax, which penalty is not imposed for a failure to pay taxes generally. If we assume that this part of the ordinance were void for the reasons stated, it would still not affect the validity of the tax. (*Mageneau v. City of Fremont,* 30 Neb. 854, 47 N. W. 280, 9 L. R. A. 786, 27 Am. St. Rep. 436.) In 2 Cooley on Taxation (3d Ed.), p. 438, the author, after stating that the constitutional provision against imprisonment for debt does not apply, says: "In case of license taxes it is still customary to provide for arrest and imprisonment as a means of enforcing payment." A large number of cases are cited in support of the text. In *Rosenbloom v. State,* 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922, the former decisions of the Supreme Court of Nebraska · holding to the contrary are overruled. The Supreme Court of Nebraska in the latter case brings itself into harmony with the great weight of authority in holding that arrest, fine, and imprisonment may be resorted to for the purpose of enforcing

payment of license and occupation taxes. The decisions from a large number of the state courts are cited in the latter Nebraska case, and we shall do no more than to refer the reader to that case for the decisions upon this point.

From what has been said it follows that the ruling of the district court was in accordance with the great weight of authority, and the judgment is accordingly affirmed with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.